THOMPSON et al. v. DODGE et al.
(No. 6170.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 19, 1919. Rehearing Denied March 26, 1919.)

1. CERTIORARI ⬦62 — CONSOLIDATION OF WRITS.

The district court did not err in consolidating writs of certiorari to review orders of the county court appointing an administrator to collect inheritance tax, approving the contract between the administrator and the attorney for the estate, ordering sale of a small part of the land belonging to the estate to pay the attorney's retaining fee, etc.

2. APPEAL AND ERROR ⬦761—BRIEFS—CITATION OF AUTHORITIES—RULE OF COURT.

The statement of the brief that authorities will be found "in argument under separate cover" is not in compliance with Rules of the Courts of Civil Appeals, No. 36 (142 S. W. xiii), requiring the authorities to be annexed to each proposition with its statement and at the end of it a reference simply to the authorities relied on, if any, in support of it, giving the order in which they should be cited.

3. APPEAL AND ERROR ⬦742(3) — ASSIGNMENT OF ERROR — STATEMENT — RULES OF COURT.

Statement of assignment of error that the court erred in refusing to give a decision "upon the several demurrers set out in the several answers of defendants, filed in each of said causes," giving the numbers, "and in ruling that all such demurrers had been waived," is not in compliance with the rules of the Courts of Civil Appeals, being merely a reference to the record and other parts of the brief.

4. APPEAL AND ERROR ⬦742(2) — ASSIGNMENTS ON DIFFERENT SUBJECTS—GROUPING —ABSENCE OF PROPOSITIONS OR STATEMENTS.

Assignments of error which are grouped, though they are on different subjects, none being followed by a proposition or a statement, will not be considered.

5. APPEAL AND ERROR ⬦742(1) — ASSIGNMENTS OF ERROR — STATEMENT — INSUFFICIENCY.

Statement, supporting assignment of error, which vaguely referred to other parts of the voluminous brief and the record, did not comply with the rules of the Courts of Civil Appeals as to such statements.

6. APPEAL AND ERROR ⬦742(6) — ASSIGNMENTS OF ERROR—ABSENCE OF STATEMENT.

Assignments of error complaining that some undisclosed paragraph, from a given number to a given number, inclusive, found in a motion for the court to file conclusions of fact, had been ignored by the court, none of them being followed by a statement, cannot be considered.

7. TAXATION ⬦859(1)—INHERITANCE TAXES —APPOINTMENT OF ADMINISTRATOR — STATUTES—CONSTITUTIONALITY.

Rev. St. arts. 7487–7502, providing for the collection of inheritance taxes, and appointment of an administrator for that purpose and to act generally, if no application for letters testamentary or of administration shall be made, are constitutional.

8. EXECUTORS AND ADMINISTRATORS ⬦22(1) —APPOINTMENT TO COLLECT TAX AND FOR ALL PURPOSES.

Under Rev. St. arts. 7487–7502, providing for collection of inheritance taxes, the county judge has authority to appoint a permanent administrator of the estate of a decedent, who has authority to administer the estate, and, among other things, to collect the inheritance tax, and not merely a special administrator.

9. EXECUTORS AND ADMINISTRATORS ⬦97— ADMINISTRATOR TO COLLECT INHERITANCE TAX—CONTRACT WITH ATTORNEY—INVALIDITY.

Despite Rev. St. arts. 7487–7502, providing for collection of inheritance taxes and appointment of administrator for that purpose, and articles 3623, 3624, as to allowance of reasonable attorneys' fees to executors and administrators, county judge held unauthorized to approve contract between administrator to collect inheritance tax on estate of decedent in another state, and an attorney, which contract was fraudulent and unconscionable as calling for such payments to attorney by way of retainer and for services as would exploit estate for his benefit.

10. WILLS ⬦245 — PROBATE — COMPLIANCE WITH STATUTE.

Where the requirements of Rev. St. art. 3276, in relation to application for probate of a foreign will, were met, the will was entitled to probate, and the county judge had no power or authority to deny it.

11. WILLS ⬦245—PROBATE—RIGHT TO CONTEST—CREDITOR—"PERSON INTERESTED."

No one is entitled to contest probate of will of a resident of another state under Rev. St. art. 7875, except a "person interested" therein, that is, one who either absolutely or contingently is entitled to share in the estate, so that a creditor of testator is not included.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Person Interested.]

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. EXECUTORS AND ADMINISTRATORS ⚙⟹324, 367—ADMINISTRATOR'S SALE OF LAND—VOID CHARACTER—STATUTES.**

Sale of decedent's land by administrator appointed to collect inheritance taxes pursuant to Rev. St. arts. 7487–7502, though approved by county judge, proceeds having been largely used to pay an attorney for the estate employed by contract void as unconscionable and in exploitation of the estate, *held* void; no attention having been paid to article 7494, requiring previous ascertainment of amount of tax, and the sale ·having been sought improperly under articles 3489, 3490.

**13. EXECUTORS AND ADMINISTRATORS ⚙⟹518 (4)—FOREIGN DECEDENT—RIGHT OF EXECUTORS—STATUTE.**

A party in Texas could not, unknown to executors under the will of an Iowa decedent, have the will of such decedent probated, and afterwards prohibit the executors from administering the estate in Texas because more than 20 days elapsed after the probate before they sought to qualify under Rev. St. art. 3278.

Appeal from District Court, Real County; Hon. R. H. Burney, Judge.

Writs of certiorari ·by D. D. Thompson and others against N. P. Dodge, Jr., and another. From a judgment for respondents in consolidated case, petitioners appeal. Affirmed.

C. L. Bass, of Houston, and E. F. Vanderbilt, of Leakey, for appellants.

W. D. Love, of Uvalde, and Denman, Franklin & McGown, of San Antonio, for appellees.

FLY, C. J. This appeal is from the judgment of the district court of Real county in a consolidated case, consisting of four certiorari cases from the county court, prosecuted by D. D. Thompson, county judge of Real county, C. L. Bass, B. F. O'Bryant, Mrs. Claudia Payne, J. D. Smith, and T. A. Youngblood, individually and as administrator of the estate of Grenville M. Dodge, deceased; the appellees being N. P. Dodge and Grenville D. Montgomery. The writs of certiorari were obtained to secure a review of the orders of the county court, appointing Youngblood administrator, approving a contract between Bass and Youngblood, ordering the sale of ten sections of land ·belonging to the Dodge estate and confirmation of the same, and an order refusing a probate of the will of G. M. Dodge, deceased, and to appoint the executors named in the will. The writs were consolidated and tried as one case, the same being withdrawn from the jury, and the court ordered that the will of G. M. Dodge be probated and N. P. Dodge and Grenville D. Montgomery be appointed executors; that the administration of the estate be set aside and the same be placed in the hands of the executors; that the contract between Bass and Youngblood be set aside as illegal, void, and opposed to public policy; and ·that the order of the county court directing the sale of ten sections of. land, together with the order approving the sale, be declared null and void and the same set aside.

The uncontroverted facts justify the following conclusions:

Grenville M. Dodge died· on or about January 3, 1916, in the state of Iowa, leaving a will disposing of his property and appointing as trustees or executors, N. P. Dodge, Jr., and Frank S. Pusey, and providing that Grenville D. Montgomery should act.if either of those named did not act. Pusey. declined to act, .and Montgomery· and Dodge qualified after the will had been duly probated in Iowa. The testator left as a· part of his estate 46,000 acres of land in Real county as well as lands in other counties of Texas. On April 17, 1917, upon the suggestion of E. P. Vanderbilt, county attorney of Real county, D. D. Thompson, county judge, appointed T. A. Youngblood temporary administrator of the Dodge estate, reciting in tne order that Dodge had left a will which was probated in Iowa. No inventory or appraisement was filed by the temporary administrator. On May 7, 1917, the county judge, upon his own motion, according to his statement, appointed T. A. Youngblood permanent administrator of the Dodge estate, reciting that the appointment was made under the law relating to inheritance taxes; the bond of the administrator being placed at $1,000. On that same day Youngblood presented to the court a written contract which he had entered into with C. L. Bass, in terms, as follows:

"State of Texas, County of Real.

"Know all men by these presents that:

"I. Whereas, the undersigned T. A. Youngblood has heretofore qualified as administrator of estate of Grenville M. Dodge, deceased, under appointment of the county judge of said county in administration proceedings on said estate in cause No. 11 in said court, as is evidenced by letters of administration on said estate heretofore issued to said T. A. Youngblood; and,

"II. Whereas it was necessary for said Youngblood to have services of an attorney to represent him in invoking the jurisdiction of said county court over said estate and in appointing said Youngblood, and by reason thereof said Youngblood employed C. L. Bass, an attorney at law, in making said jurisdiction of said county court; and,

"III. Whereas, in the order of` said county court appointing said Youngblood, he is required to contract for services of an attorney at law to represent said administrator and his successors ,in all litigation and other matters relative to said estate, and it is recited that such contract shall become binding on said estate when reported by said administrator to and approved by said county court; and in pursuance of said requirement, said Youngblood has contracted with said C. L. Bass for his legal services in terms herein set forth.

"IV. The undersigned T. A. Youngblood as administrator of and on behalf of said estate

⚙⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

as first party and C. L. Bass as second party, by reason of the offer of first party to second party as set out in the premises and the acceptance thereof by second party, have agreed upon the terms evidenced herein.

"A. In consideration of legal services heretofore and hereafter to be rendered by second party to first party and his successors in said administration proceedings in all litigation and other matters relative to said estate, there shall be paid to second party as and when any inventory and appraisement of value of said estate is approved by said county court, a sum of money, as a retainer, out of said estate equal to five per cent. (5%) of said appraised value.

"B. And further, there shall be paid to second party—as and when second party may begin performing services for said estate in any contested legal proceedings in or out of any court wherein any matter of value is sought to be recovered either directly or indirectly, by or from said estate—a sum of money equal to ten per cent. (10%) of the valuation that is claimed for said estate in said contested legal proceeding.

"C. And in addition, there shall be paid to second party, if and when said estate prevails in said contested legal proceedings, a sum of money equal to said sum of money payable to second party under subparagraph B, of this paragraph IV.

"D. And for any other services of second party to said estate there shall be paid out of said estate to second party such sum or sums of money, in addition to that provided for in subparagraph A of this paragraph IV; as shall be reasonable; same to be payable as and when such service has been performed.

"E. And further, for the period during which payment to second party of any of said sums of money may be delayed, there shall be paid to second party out of said estate interest thereon at the rate of six per cent. (6%) per annum on any such sum.

"V. If after second party begins performing services of any kind for which second party may be entitled to compensation according to terms in paragraph IV hereof any one should contest in any court such compensation and fail to reduce same, there then shall become due and paid out of said estate to second party, all expenses necessarily incurred by second party in such contest, and a sum of money, equal to one-fourth (¼) of the amount of said compensation, to compensate second party for the time and labor of himself and others assisting second party in the contest, and for any delay in making payment to second party under terms of this paragraph V, there shall be added interest thereon at rate of six per cent. (6%) per annum.

"VI. T. A. Youngblood is not and shall not be in any wise personally obligated in any wise under the terms of this instrument.

"VII. As recited in paragraph III hereof, the terms of this instrument shall become binding upon said estate when this contract is reported to and approved by an order of said county court.

"In testimony whereof, witness the respective hands of first party and of second party on this the 7th day of May, 1917, to two original copies hereof. T. A. Youngblood, as administrator of and on Behalf of said Estate of Grenville M. Dodge, Deceased, First Party. C. L. Bass, Second Party."

The county judge, not only formally approved that contract, but recited that he was furthermore of the opinion that the terms are reasonable and are necessary for the protection of said estate. At no time did it appear that there were any debts due by the Dodge estate. Youngblood qualified as permanent administrator on May 7, 1917. On July 16, 1917, in vacation, the county judge appointed appraisers, and on same day a list of lands containing 46,000 acres, valued at $250,000, was filed by two of the appraisers and approved by the county judge. On July 17, 1917, C. L. Bass filed for Youngblood an application for an order to institute suit to secure a construction of the will of Grenville M. Dodge, and on same date the order was granted by the county judge, D. D. Thompson. On October 1, 1917, Youngblood filed an application to sell ten sections of land situated in Real county, reciting that the sale was necessary to pay certain local claims against the estate, among the number inheritance taxes and a fee of $12,500 due Bass, under the terms of the contract approved by the court, being 5 per cent. of the appraised value of the estate, and also incidental expenses of $1,000 for procuring evidence and the construction of the will, and $1,500 commissions for the administrator and $500 for costs. The order was granted, and the land was sold and sale confirmed by the county court. Out of the proceeds, $9,000 was paid to Bass and $100 for costs. On September 15, 1917, N. P. Dodge, Jr., one of the executors under the will of G. M. Dodge, filed an application to probate the will, which application was contested by Youngblood, through his attorneys, C. L. Bass and Vanderbilt & Wright, on the ground of fraud. Probate of the will was denied. We conclude that the findings of fact of the trial judge are correct.

Appellants have filed in this court a brief containing 233 printed pages, presenting for consideration 188 assignments of error, although there cannot legitimately arise more than half a dozen issues. The material issues in the case will be considered and the views of this court thereon fully presented.

[1, 2] The first 75 assignments attack the jurisdiction of the district court and the writs of certiorari, as well as the order consolidating the matters presented by the writs of certiorari. There is no merit in any of the assignments. The writs of certiorari were properly prepared, the bonds were valid, and the court did not err in overruling the pleas to the jurisdiction of the district court. The court did not err in consolidating the different writs of error and trying all the issues at one time. No authority is offered in the brief for the proposition reiterated

again and again that it rendered the writs of certiorari invalid because each order of the county court was not specified. The statute (article 733, Rev. Stats.) says:

"Any person interested in the estate of a decedent or ward may have the proceedings of the county court revised and corrected at any time within two years after such proceedings were had."

Not only are no authorities offered to sustain the assignments mentioned, but there is not an authority cited anywhere in the brief. The statement that authorities will be found "in argument under separate cover" is not in compliance with Rule 36 (142 S. W. xiii), which requires the authorities to be "annexed to each proposition, with its statement, and at the end of it, a reference simply to the authorities relied on, if any, in support of it," giving the order in which they should be cited.

[3] The eightieth assignment of error assails the action of the court in refusing to give a decision "upon the several demurrers set out in the several answers of defendants, filed in each of said causes, Nos. 58, 61, 62, 63 and 67, and in ruling that all such demurrers had been waived." What the demurrers were is not disclosed in the assignment. The statement is not in compliance with the rules, merely being a reference to the record and other parts of the brief. Nothing appears in the brief upon which to base any opinion as the claims of the assignment.

[4] Assignments of error from 81 to 110, inclusive, are grouped, although on different subjects, and none of them is followed by a proposition or a statement. They will not be considered.

[5] Assignment 111 complains that—

"The court erred in his conclusions of fact by failing to find upon paragraph 1 of defendants' motion for the court to find and file conclusions of fact and law."

What paragraph 1 referred to is not disclosed by assignment or statement. The latter utterly fails to comply with the rules as to such statements. Vague references to other parts of the voluminous brief and the record do not meet the requirements. The assignment is overruled.

[6] Assignments of error from 112 to 121, inclusive, are like unto assignment 111, each one complaining that some undisclosed paragraph from Nos. 2 to 16, inclusive, found in a motion for the court to file conclusions of fact, had been ignored by the court. None of them is followed by a statement, and they cannot be considered.

Assignments of error from 122 to 132 complain of the failure of the court to file conclusions of law on paragraphs in a motion, numbered from 1 to 16, inclusive. What the paragraphs consisted of is not disclosed in assignments, and there are no statements as required by the rules.

[7, 8] It is provided in article 7491 that—

"If within three months after the death of a decedent leaving property subject to taxation under this chapter, no application for letters testamentary or of administration shall be made, it shall be the duty of the county court to appoint an administrator."

That law was amended in 1917, the amendment taking effect about June 20, 1917 (Acts 35th Leg. c. 116 [Vernon's Ann. Civ. St. Supp. 1918, art. 7491]), about six weeks after the county court made Youngblood permanent administrator. The amendment was approved by the Governor on March 30, 1917, becoming effective 90 days after adjournment on March 21, 1917. The administration in this case must perforce be considered under the old statute.

It has been heretofore held by this court, in this case, that the statute of 1907, articles 7487 to 7502, inclusive, which provide for the collection of inheritance taxes, is constitutional, and we adhere to that opinion, although a writ of error has been granted in the case by the Supreme Court. Dodge v. Youngblood, 202 S. W. 116. We have been informed that the writ was granted on the ground that the administration to collect an inheritance tax is a special, and not a general, administration of the estate. If only a special administration is intended, we fail to understand article 7500, which provides that "whenever any debts shall be proven against the estate" certain things shall be done. What would an administrator appointed to collect inheritance taxes and that alone have to do with debts against the estate? There are other acts required of the administrator consistent only with the exercise of the powers of a general administrator. In fact, the administrator appointed under the terms of article 7491 is put in the same class with the executor or trustee appointed by the will or the general administrator appointed under the general law of administration, and each one is clothed with the same powers. The general law must be referred to in order to carry out the administration, for no provision is made for the bond and affidavit of the administrator, which it would seem are absolutely necessary, and no method of procedure given in regard to conducting and winding up the estate. Evidently the Legislature contemplated an administration as directed by the general statute, and there can be no due administration of justice under the inheritance tax law without the aid of the general administration law. That the administration is one independent of general administration would be the strongest argument against the constitutionality of the law creating it, and

we see no reason in sustaining any such argument and destroying a salutary law.

[9] We are of opinion that the inheritance tax law is constitutional, as held in our former opinion, and that the county judge had the authority under the law to appoint a permanent administrator of the estate of decedent, and that he has the authority to administer the estate and, among other things, to collect the inheritance tax. If there were no debts due by the estate to any one, then the administration would be confined to the collection of the tax from the beneficiaries and the return of the property to them. No authority, however, was vested in the county judge to approve the contract between Bass and Youngblood, which was executed and approved before any service could have been performed by either Youngblood or Bass, and which by its terms allowed the exploitation of an estate of a deceased citizen of one of the states of the American Union. An analysis of that contract shows that it had been prepared and executed before the appointment of the administrator was made, because it appears that it was of the same date with the appointment and was at once approved by the county judge. The consideration for the contract is stated to be services of the attorney to represent Youngblood "in invoking the jurisdiction of said county court over said estate"; but the statute does not contemplate any such invocation, but makes it, under the old law, the duty of the county attorney to invoke such jurisdiction, and fixes a maximum fee of $20 for the performance of such services. In fact, the law does not seem to contemplate that a citizen shall apply for administration or invoke the jurisdiction, but in the first instance the county judge is commanded to perform the duty on his own motion, and he recites in his order of appointment that he performed this duty on his own motion. Neither under the inheritance law nor the general law as to administrations was there any ground for the appointment of a temporary administrator. No provision is made in the inheritance tax law for a temporary administration, and it is clear that none is contemplated, and under the provisions of article 3297 a temporary administrator is appointed only "whenever it may appear to the county judge that the interest of an estate requires the immediate appointment," of such administrator. There was nothing in this case upon which to base such appointment, and, if there had been, the appointment did not take effect, because the person appointed had not qualified as required by law. Rev. Stats. art. 3299. It follows that Bass had not, up to the time the contract was approved, performed any service for the estate or any one else.

Under the terms of the contract, the estate was to pay for services to a citizen to invoke the jurisdiction of a court for something not justified by any law brought to our notice, and the contract seeks to justify such services on the ground that it had been so nominated in the order of the county court appointing the administrator, which was made simultaneously with the approval of the contract. Youngblood testified that Bass had nothing to do with securing the temporary administration, and refused to advise him in any way until the contract was signed and approved, which was after the permanent administration was granted.

Not only was securing the appointment for Youngblood given as a consideration for the contract, but services "heretofore and hereafter to be rendered" by Bass were also to be paid for out of the Dodge estate, the sum to be 5 per cent. of the appraised value of the estate. The appraisers gave the total value of the estate as $1,630,836.78, and the property in Texas was valued at $250,000. Not only was a fee of $12,500 provided for before any service was performed and before it was known that the estate would require legal services, but provision was made for 10 per cent. of any sum that might be sought to be recovered for the estate, so that, if the executors of the Dodge estate sought to recover the lands from the administrator, a fee of $25,000 more would be taken from the estate. Thus a fee of $37,500 was provided for, and yet that did not cover the demands of the attorney who obtained the contract, for it was further provided that, if the administrator prevailed in suits brought for the property, the attorney should get another 10 per cent. and further reasonable fees were provided "for any other services." Not only were these unconscionable fees provided for, but 6 per cent. interest was also provided for on delayed payments. The services for which these enormous fees were to be paid were not in the interest of the estate, but were against the estate and for the purpose of appropriating a large portion of it to the use and benefit of the attorney and depriving the estate of those sums.

No such contract has ever been known in the annals of Texas jurisprudence, and it finds no sanction in law, justice, or good conscience. The inheritance tax law makes no provision for employing an attorney and contracting to pay him for services in the future which may never be performed. The administration provided for in that law is primarily for the purpose of collecting an inheritance tax, and, as indicating the legislative mind on the subject, it is provided in the amendment to article 7491 that the person appointed by the comptroller to collect inheritance taxes shall have the power to appoint other persons to sue for and collect the same and shall pay them not exceeding 10 per cent. of the amount of the taxes collected. There is no warrant of authority in the gen-

eral administration law, if it applies to a case of this character, for all services for which compensation is contemplated are those already performed. The statute (article 3623) provides:

"Executors and administrators shall also be allowed all * * * reasonable attorney's fees that may be necessarily incurred by them in the course of the administration."

In article 3624 it is provided:

"All such charges as are provided for in the preceding article shall be made in writing, showing specifically each item of expense and the date thereof and shall be verified by the affidavit of the executor or administrator, and filed with the clerk and entered upon the claim docket, and shall be acted upon by the court in like manner as other claims against the estate."

But in this case an agreement is made to pay an attorney thousands of dollars for services not performed and which probably would never be performed. The contract, as found by the trial court, "is unconscionable, provides for extortionate fees for services not already rendered, and was illegal, contrary to public policy, and void." The law contemplates that the claims of an administrator for attorney's fees must be presented to the court, and it must find that the services rendered were necessary and that a reasonable charge was made for them. In this instance the court has prejudged the matter of attorney's fees, or rather did not sit in judgment upon them at all, and could never pass upon the necessity or reasonableness of the fees.

The contract was fraudulent and void, in the face of justice, equity, and law, and a man who would deliberately enter into a contract to exploit an estate that he is under obligation to protect and maintain was utterly unfit to administer any estate, and it being apparent that the administration was not to conserve the interests of the estate or of the state of Texas, the trial court properly pronounced it null and void. The act of Youngblood in applying for and obtaining an order to sell property, not to pay debts nor to pay the inheritance tax, but to pay unearned attorney's fees claimed under a void contract and pay commissions and unnecessary costs, strengthens the view that the administration was not obtained for any legal purpose.

An administration forced upon an estate cannot be conceived to be legal without the administrator being sworn and required to give a bond. The bond required under the laws of Texas is one not less than double the estimated value of the estate, and yet, in keeping with other matters connected with this administration, the county judge required a bond of $1,000 of the administrator in an estate valued at $250,000. Whether the oath was ever taken or the bond filed is not disclosed by the record in this case.

[10, 11] Upon what grounds the probate of the will of G. M. Dodge, deceased, was refused and the executors not appointed, does not appear from the record of the county court. Article 3276, Revised Statutes of Texas, provides:

"When application is made for the probate of a will which has been probated according to the laws of any of the United States or territories, or of any country out of the limits of the United States, a copy of such will and the probate thereof attested by the clerk of the court in which such will was admitted to probate, and the seal of the court annexed, if there be a seal, together with a certificate from the judge or presiding magistrate of such court, that the said attestation is in due form, may be filed and recorded in the court, and shall have the same force and effect as the original will, if probated in said court; provided, that the validity of such will may be contested in the same manner as the original might have been."

It is not pretended that the requirements of this law were not met by appellees in regard to the will of Grenville M. Dodge, deceased, and such compliance entitled the will to probate. The county judge, under such circumstances, had no power or authority to deny the probate, and then its validity might be attacked by one authorized to make such attack. Rev. Stats. art. 7875; Vidaurri Estate v. Bruni, 156 S. W. 315, writ of error refused; Dew v. Dew, 23 Tex. Civ. App. 676, 57 S. W. 926. No one is entitled to contest the probate of a will except a person interested therein, and in the cited case of Vidaurri v. Bruni this court held that by "person interested" is meant one who either absolutely or contingently is entitled to share therein, and this would exclude the creditor. If the administration had been properly and lawfully obtained, appellants had no authority to assail the will, because that was something with which they were not concerned. If the estate owed the state inheritance taxes, the disposition made in the will could not affect the claim of the state. No matter how much fraud or undue influence was used in procuring the will, the state was not interested. The facts indicate that no interest would be affected by a probate of the will except the interest of the administrator and his attorney in commissions and fees taken out of the estate.

[12] It follows that the sale of the 10 sections of land was illegal and void, and, instead of the proceeds, $11,870, being used to pay the taxes, $9,000 was given to the attorney, and the balance appropriated to pay commissions, costs, etc. No necessity was shown for the sale of the land. No claims had been proved against the estate; the whole object of the sale being, as fully appears from the application for the sale, to carry out the design of using the estate to

pay off unearned attorney's fees and commissions and unnecessary costs. The application to sell was made before the lands had been separately appraised and valued and the inheritance tax assessed as required by the statute. When the application was made, only $18 was due for costs, and the administrator had $90 belonging to the estate with which to pay the costs. The sale was utterly unjustifiable, not made for any legal purpose, and was null and void. There is no provision made in the inheritance tax law for the sale of land until it has been ascertained who are the legatees or heirs and the amount of the tax charged against the inheritance of each heir, and the sale must be of that portion of the estate. Article 7494. Evidently no attention was paid to that article, and the sale was sought under articles 3489 and 3490, the first of which authorizes an application to sell so much of the real estate belonging to the estate as shall be sufficient to pay local charges and claims against the estate. Article 3490 requires the written application to describe the land and to be accompanied by the affidavit of the administrator showing fully the charges against the estate, etc., of which there were none except the amount of unearned attorney's fees.

On September 15, 1917, before the land of the estate was sold, application was filed in the county court of Real county to probate the will of G. M. Dodge which had been probated in Iowa on January 15, 1916, and an authenticated copy of the will was filed and recorded in the court. Under the provisions of article 3289, when the foreign executor filed the will and made the necessary showing the administrator should have been cited and his letters revoked by the county judge. But such action was refused by the county judge and the unlawful administration continued. The county judge swore that he would not probate the will because he "did not want two administrations for the same property in the same county," not recognizing the requirement of the law that it was his duty to revoke the administration granted by him.

On July 16, 1917, application was made by the administrator for an order authorizing the institution of a suit to procure a construction of the will of G. M. Dodge, and the order was promptly granted, and afterwards one of the charges for which the land was to be sold was $1,000 to construe the will. The record fails to show that the will was construed, and it would seem that it did not matter about its construction, as the lands belonging to the estate were sold when desired to pay attorney's fees, commissions, and costs. The will should have been probated as required by statute, and the state could then have collected its inheritance taxes from the estate. The district court properly performed the duty that rested primarily on the county court, and probated the will.

[13] It is the contention of appellants that Youngblood had the will of G. M. Dodge probated on July 16, 1917, and, if that were true, the county judge should have granted letters to the executors, required the necessary bonds, and have removed Youngblood from the administration. All that was done by Youngblood was to file the will and have it recorded, which was done, it would seem, as a basis for a suit to construe the will. The county judge made no order probating the will or appointing an executor. Under the terms of article 3278, if the will was probated in July, 1917, as claimed by appellants, it was the duty of the court to grant letters testamentary to the executor or executors appointed by the will, and that was not done, and appellants are contending that executors to whom letters were not granted are prohibited from afterwards having themselves appointed and qualifying as executors because more than 20 days had elapsed after the probate before they sought to qualify. It would be a legal farce and a solemn travesty of justice to hold that a party in Texas could, unknown to executors under a foreign will, have the will of their testate probated and afterwards prohibit them from administering the estate because barred by limitation. Courts will not lend themselves to the perpetration of such injustice. The executors, ignorant of the attempted probate of the will of G. M. Dodge, being in a distant state, and not having received any appointment by the court, could scarcely be expected to qualify as executors in Texas. The district court had the authority to perform the duty, which should have been performed by the county court, and properly met the duty. Whether letters testamentary had been granted to Dodge and Montgomery in Iowa or not, they were appointed in the will, and that fact brought them within the purview of the statute. The record filed by Dodge to obtain a probate of the will, however, showed that he and Montgomery had qualified in Iowa as executors of the estate of Grenville M. Dodge, deceased.

Every material point that could arise in the case has been considered, despite the fact that some of them are not presented properly in the brief, and nine-tenths of the assignments of error are drawn and presented without reference to rules prescribed by the Supreme Court.

The judgment is affirmed.