**CAVANAUGH et al. v. CAVANAUGH et al.
(No. 1915.)***

(Court of Civil Appeals of Texas. Amarillo.
March 1, 1922. Rehearing Denied
March 22, 1922.)

**1. Wills ⬤⟿238—Prior proceedings held suit to contest foreign will.**

A prior suit seeking to have set aside a foreign will, recorded within the state under Rev. St. art. 3276, on the ground the will was invalid, was a suit to contest the will as authorized by article 7875, notwithstanding the answer, which prayed for the probate of the foreign will.

**2. Wills ⬤⟿281—Unnecessary attack on former judgment to which contestants were not parties held not to defeat petition to contest.**

In a suit to contest a foreign will, an attack upon the validity of a former judgment admitting the will to probate, to which plaintiffs were not parties, does not defeat the validity of the petition to contest the will, even though it was unnecessary for plaintiffs to have attacked the former decree.

**3. Parties ⬤⟿74—Unknown heirs properly designated as defendants.**

Under Rev. St. art. 1875, permitting suit against the unknown heirs of a deceased person, their heirs or legal representatives, describing them as heirs of a named ancestor, a petition against the unknown heirs of a devisee is sufficient without also designating as parties the heirs or legal representatives of the unknown heirs.

**4. Wills ⬤⟿281—Petition to contest not objectionable as omitting name of successor in trust.**

Objection that a petition to contest a will failed to state the name of a successor in trust therein referred to was not well taken where subsequent allegations stated that the title of the trustee was vested either in the purchaser from him or in a bishop who was the authorized title holder for the beneficiary church.

**5. Judgment ⬤⟿572(1)—On demurrer presumed not to have been on the merits.**

While a judgment on demurrer may be as conclusive as a judgment on the facts, it must clearly appear, to give it that effect, that the demurrer went to the merits of the action or defense; otherwise it will be presumed the objection was to the form.

**6. Wills ⬤⟿371½—Dismissal of will contest in district court on appeal does not revive county court judgment.**

Where the district court dismissed a will contest pending before it on appeal from the county court, its dismissal did not revive the judgment of the county court, but put all parties out of court.

**7. Wills ⬤⟿400—Testimony of incompetent witness to transactions with deceased held harmless in view of other testimony to same facts.**

If testimony by a contestant as to the condition of testator when she visited him about the time the will was made was incompetent as a transaction with testator, under Rev. St. art. 3690, the admission of such testimony was not prejudicial to contestees, where other witnesses had testified substantially without contradiction to the same conditions.

**8. Wills ⬤⟿400—Incompetent testimony testator did not converse with any one held harmless.**

Where it was undisputed that testator at the time he made his will had been suffering from cancer of the mouth, and had also had several paralytic strokes, which made it almost impossible for him to converse with any one, incompetent testimony by contestant that during the two days she visited in the house where testator was about the time the will was executed testator did not converse with any one was not so prejudicial to contestees as to require reversal of a judgment holding the will invalid.

**9. Wills ⬤⟿55(5)—Evidence as to physical and mental condition held to sustain finding of incapacity.**

In proceedings to contest a will, evidence that testator was more than 80 years of age, that he had had several strokes of paralysis, and a cancer in his mouth, which made him practically helpless and confined him to his bed, and at times put him in a stupor from which he would have to be aroused, *held* to sustain finding of the jury that testator was without capacity to make his will.

**10. Wills ⬤⟿166(1)—Evidence held to sustain finding of undue influence by all but one of the named parties.**

In proceedings to contest a will, evidence *held* to sustain a finding of undue influence by all of the parties named by the jury in the finding except one of them who was not present when the will was made.

Appeal from District Court, Armstrong County; Henry S. Bishop, Judge.

Suit by William Stephen Cavanaugh and others against Joseph Cavanaugh and others, to have the probate of a foreign will set aside for incapacity and undue influence. Judgment for plaintiffs in the district court, on appeal from the county court, and defendants appeal. Affirmed.

J. S. Stalling, of Claude, and E. O. Northcutt, C. E. Gustavus, and M. J. R. Jackson, all of Amarillo, for appellants.

Jos. H. Aynesworth and J. L. Lackey, both of Wichita Falls, for appellees.

BOYCE, J. This is an appeal from a judgment denying the validity of the will of Jerry Cavanaugh, deceased, and setting aside a previous judgment probating the same. The several proceedings which were had in the matter will appear in the following statement:

The testator, Jerry Cavanaugh, died on January 5, 1917, being at the time about 80

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused May 10, 1922.

years old, in Jefferson county, Kan., at the home of his son, Joseph Cavanaugh. He formerly lived in Kansas, but many years ago, accompanied by his son, Dan, had moved to Armstrong county, Tex., where he had resided for many years, and where he accumulated considerable property, real and personal. In November, 1916, he went to the home of his son, Joseph Cavanaugh, whether for the purpose of changing his residence, or merely on a visit, after attending the funeral of one of his granddaughters, is a matter of dispute. He was taken sick soon after he reached the Joseph Cavanaugh home, and was confined to his bed from about December 1st until his death. His legal heirs were three sons, Dan, Joseph, and Stephen, two daughters, Katie Samples and Lula Bergen, and the children of a deceased daughter, Mary E. Crane. These children were Ethel Earle, Morris Crane, Ernest Crane, Alta Crane, and Nellie Coppock. On December 16, 1916, while at Joseph Cavanaugh's home, the deceased made the will in question. The principal beneficiaries of the will were the sons Dan and Joseph and his daughter Lula Bergen, his son Dan receiving the larger share. Substantial portions of his estate were devised to Stephen Cavanaugh, Katie Samples, and Jerry Cavanaugh, the son of Dan Cavanaugh. The Crane heirs were given $30 each. The will provided a legacy of $150 for Father Hugh Herron, a Roman Catholic priest, and also devised a small tract of land to the said Father Hugh Herron, in trust for the Roman Catholic Church. This will was admitted to probate in Jefferson county, Kan., on January 9, 1917, and a certified copy thereof and its probate was filed and recorded as a muniment of title in the deed records of Armstrong county, Tex., in accordance with the provisions of articles 7875–7878, R. C. S. Katie Samples thereupon brought a suit in the county court of Armstrong county to contest the validity of the will, on the ground, among others, that the testator did not have sufficient mental capacity to execute the will. The judgment in that case recites that all of the heirs above named were duly cited but only Joseph Cavanaugh, Dan Cavanaugh, Jerry Cavanaugh, and Lula Bergen and her husband, Dennis Bergen, appeared and answered. This judgment decreed that the contestant, Katie Samples, take nothing by the suit, and that, on hearing of the "answer of the contestees, Joseph Cavanaugh, Dan Cavanaugh, Lula Bergen, and her husband, Dennis Bergen, and Jerry Cavanaugh, son of Dan Cavanaugh," the will be admitted to probate, and that Joseph Cavanaugh be appointed administrator of the estate. This proceeding will hereafter be referred to as the Katie Samples suit. Thereafter the plaintiffs in the present suit brought a suit in the county court of Armstrong county, Tex., to

set aside the judgment in the Katie Samples suit, and to declare the invalidity of said will admitted to probate in such proceeding. All of the defendants in the present suit were made parties to such suit except that the defendant Joseph Cavanaugh was sued only as an individual. That case was appealed to the district court, and such court sustained a special exception to the plaintiffs' petition and dismissed the cause. We will later refer to such case as district court case No. 354.

Immediately after the dismissal of the case last mentioned the plaintiffs in the present suit, to wit, Stephen Cavanaugh and the Crane heirs, filed this suit in the county court of Armstrong county against Joseph Cavanaugh individually and as administrator of the estate of Jerry Cavanaugh, deceased, Lula Bergen and her husband, Dennis Bergen, Dan Cavanaugh, Jerry Cavanaugh, D. A. Harrold, Katie Samples and her husband, and certain other defendants later referred to and alleged to be the necessary and proper parties to the suit by reason of the gifts in the will to Father Hugh Herron, individually and in trust for the Roman Catholic Church. This petition recites the fact of the institution of the Katie Samples suit and the rendition of the judgment therein, and alleged that no one appeared in said Katie Samples suit except as recited in said judgment, such recitations being already referred to; that the plaintiffs herein were not legally cited and did not appear in said cause; that upon the trial thereof, after the introduction of the evidence, the judge trying said cause informed the parties present that he was satisfied from the evidence that Jerry Cavanaugh did not have legal capacity to make such will; that thereupon the contestees present entered upon negotiations and made settlement with the contestant Katie Samples, by which they agreed to give, and did give her, a certain portion of the property out of the estate, in addition to that which she was to receive under the will, on condition that she would not further prosecute the contest, but would allow the will to be probated on the pleading of Joseph Cavanaugh and the other defendants appearing and interested in maintaining its validity; that the judgment entered was entered by the court in pursuance to such agreement, and not as an independent judgment on the facts adduced on the trial. It is stated in this petition that the plaintiffs "seek by this bill of review to open up said cause so that they may offer their evidence and be heard"; and in this connection it is alleged, in addition to the allegations already stated, that Jerry Cavanaugh was at the time of his death a resident of Armstrong county, Tex., and had no property in Kansas, and the probate court of Jefferson county, Kan., had no jurisdic-

tion to probate the said will; that, if said probate court of Jefferson county, did have jurisdiction, the plaintiffs have four years in which to contest said will, and such time has not elapsed; that Jerry Cavanaugh, at the date of the execution of said will, was unable, on account of his mental condition, to make a valid will, and that he was unduly influenced thereto by the principal beneficiaries before stated. The plaintiffs pray that—

"this bill of review be granted and that the judgments of the probate court of Jefferson county, Kan., and the county court of Armstrong county, Tex., probating the will of Jerry Cavanaugh, deceased, be set aside and held for naught and that they be allowed to be heard as to why said will should not be probated and should be held null and void, * * * and for all other and further general relief."

We will later refer to such special features of the appellant's answer as require particular notice. On appeal of this case to the district court of Armstrong county, a jury, in response to special issues, found: (1) That the deceased did not, at the time of the execution of said will, have mind and memory sufficiently sound to enable him to know and understand what he was doing and the effect of his acts in making said will; (2) that at such time the said Jerry Cavanaugh was subjected to undue influence by Lula Bergen, Dennis Bergen, Joseph Cavanaugh, Dan Cavanaugh, and Hugh Herron, and was thereby caused to make said will; (3) that the place of residence of Jerry Cavanaugh at the time of his death was in Armstrong county, Tex. Judgment was entered thereafter declaring said will and its probate a nullity.

[1] The appellants' first proposition is based on the contention that their general exception to the plaintiffs' petition should have been sustained. The reasons assigned for this contention are that the county court had no power in the Katie Samples suit to do anything but to direct that the will probated in Jefferson county, Kan., be recorded in accordance with the provisions of article 3276, R. C. S.; that such court had no power to hear any contest in such proceeding, relying on the cases of Pena y Vidaurri's Estate v. Bruni (Tex. Civ. App.) 156 S. W. 315, and Thompson v. Dodge (Tex. Civ. App.) 210 S. W. 586, to sustain this last branch of the contention; that therefore a contest of the validity of the will could only be had by an independent proceeding brought for such purpose, and that such is not the character of the petition in the present suit. We do not think this position well taken. The Katie Samples suit was filed for the purpose of contesting the validity of the will. The will was recorded in the deed records of Armstrong county, and the contestant in that suit had the right under the provisions of article 7875, R. C. S., to file such contest. If there was any improper mixture of proceedings in that case the appellants were responsible for it when they sought the probate of the foreign will in their "answer or cross-bill." (This pleading is not in the record; it is referred to in the judgment as an "answer," and in some of the other proceedings as a "cross-bill.") No question was raised as to the impropriety of deciding in the one suit all the conflicting rights thus asserted. The judgment assumed to dispose of the whole matter by determining the grounds of contest adversely to the contestant on the one hand, and, on the other hand, by granting the relief prayed for by the contestees by probating the will and appointing an administrator. If all the parties were properly before the court, and there had been a regular trial of the case, we see no good reason why the judgment would not have been res adjudicata of the rights of the parties as therein declared. As stated, the judgment recites that the plaintiffs in this suit had been duly cited in the contest proceeding, and we are inclined to think that it was necessary for them in this case to have attacked the judgment in the Katie Samples suit as a condition to proceeding in this suit to again contest the validity of said will.

[2] But, even if it had not been necessary to set aside the judgment in the Katie Samples suit, and the plaintiffs' only right was to institute an independent proceeding to contest the validity of the will admitted to probate by said judgment, yet we believe that the petition in this case should be held, on general demurrer, to be sufficient as such contest of the validity of the will. After all, the purpose of the proceeding was to have the will declared invalid. Facts were alleged where, if true, were sufficient to entitle plaintiffs to have the will declared invalid, and the fact that the plaintiffs may have mistakenly thought it necessary to set aside the judgment in the Katie Samples suit before they were entitled to such relief ought not to defeat them of the relief to which the allegations of the petition show they are entitled, and for which they in effect pray. This conclusion, and other holdings later announced, render it unnecessary to consider the question argued as to whether, in an original proceeding to have admitted to probate in Armstrong county, Tex., the foreign will probated in Jefferson county, Kan., under the provisions of article 3276, R. C. S., such probate might have been resisted on the ground that the probate court of Jefferson county, Kan., was without jurisdiction by reason of the fact that the testator was a resident of Texas, without property in Kansas.

The plaintiffs, on account of the gifts to

Father Hugh Herron, individually and in trust for the Roman Catholic Church, sued the following parties as defendants:

"The unknown heirs and all other persons interested in the estate of Father Hugh Herron, deceased, the substitute trustee of Father Hugh Herron, trustee of the Roman Catholic Church, Dan Cavanaugh, purchaser from Father Hugh Herron, trustee in the trust granted to Father Hugh Herron, under and by virtue of the purported will of Jerry Cavanaugh, deceased, the Roman Catholic Church, an eleemosynary religious organization, Rev. John Ward, bishop of the Roman Catholic Church of the diocese of Leavenworth, Kan., and all other persons interested in the trust granted to Father Hugh Herron for the Roman Catholic Church, by virtue of the purported will of Jerry Cavanaugh, deceased, aforesaid."

Appellants excepted to this portion of the petition for nonjoinder and misjoinder of parties. These exceptions were overruled, and such action of the court furnishes the basis for the second proposition urged on this appeal.

[3] As to the nonjoinder, it is contended that the plaintiffs should have sued the unknown heirs of Father Hugh Herron, "and their heirs or legal representatives," in the terms of article 1875, R. C. S. This article of the statute provides in part that—

"Where any property of any kind in this state may have been granted or may have accrued to the heirs as such, of any deceased person, * * * any party having a claim or cause of action against them relative to such property, if their names be unknown to him, may bring his suit or action against them, their heirs or legal representatives, describing them as heirs of such ancestor, naming him * * * and if the plaintiff, his agent, or attorney shall make oath * * * that the names of such heirs * * * are unknown to the affiant, the clerk shall issue a citation for such heirs," etc.

We think the petition sufficiently complies with the law in this respect.

[4] It will be noted that the statute expressly provides that the defendants shall be described "as the heirs (unknown) of such ancestor." It is also urged that the petition should have named the trustee who took the title for the Roman Catholic Church, upon the death of the said Father Hugh Herron, or have alleged that such substitute trustee was unknown. The petition might be subject to this exception were it not cured by other allegations, which we construe to allege that the title held by the said Father Hugh Herron in trust is vested in either Dan Cavanaugh, purchaser from him, or the Rev. John Ward, bishop of the diocese of Leavenworth, Kan., who is in another part of the petition alleged to be "the authorized title holder of the property for the Roman Catholic Church under said trust." The last state-ment we think also disposes of the contention as to misjoinder, to wit that the Rev. John Ward was not a proper party to the suit.

[5] The judgment of the district court in cause No. 354 was not res adjudicata, as urged by the third proposition. The judgment in the said cause recites that defendants' special exception No. 2 was sustained, and the judgment is that the cause be dismissed. The record does not inform us what were the grounds of the exception sustained, and it is the law that—

"A judgment on demurrer may be as conclusive as a former adjudication as would a judgment on the facts; but, to have that effect, it must clearly appear that the demurrer went to the merits of the action or defense; otherwise it would be presumed that the objection was to the form, and not to the merits." Bomar v. Parker, 68 Tex. 435, 4 S. W. 600.

[6] The dismissal of the cause in the district court did not revive the judgment of the county court from which the appeal was taken, "but put all parties out of court." Harter v. Curry, 101 Tex. 187, 105 S. W. 988.

Mrs. Ethel Earle, one of the Crane heirs, testified that she visited her grandfather at the home of Joseph Cavanaugh about December 31; 1916; that she was there a part of two days; that she tried to talk to him, but he could not talk to her, and in this connection testified, over objection:

"At that time Jerry Cavanaugh, my grandfather, was in bed doing nothing. He was in bed, and he soiled the bed so she (my aunt Lula) cleaned the bed up and told me that was his condition. As to his physical strength, he had none. He was fed with a spoon—raised up and fed with a spoon. My Aunt Lula fed him. During the portions of the two days that I was there he carried on no conversations with any one; he never carried on any."

[7] The testimony just quoted was objected to as being "transactions with or statements by the testator" within the provisions of article 3690, R. C. S. Whatever may have been our opinion as to the admissibility of this evidence as an original proposition, we doubt whether, under recent decisions of the Supreme Court, its admissibility can be successfully maintained. Holland v. Nimitz (Tex. Com. App.) 232 S. W. 298, and authorities; Perdue v. Perdue, 110 Tex. 209, 217 S. W. 694, 220 S. W. 322. The case first referred to is a decision by the Commission of Appeals, but, in adopting the recommendation of the Commission of Appeals as to the disposition of the case, the Supreme Court said:

"We approve the holding of the Commission of Appeals on the question discussed in its opinion."

So that we regard the case as being an authority by the Supreme Court on the ques-

tion. But, assuming that the evidence comes within the terms of the statute, we do not think its admission requires a reversal of this case. The undisputed evidence shows that the testator had not been in good health for several years. An operation for a cancer on his mouth had left his lips in such condition as that he, before his illness, talked and ate with difficulty. He was unable to prevent saliva and food from running down out of his mouth. About November 22, 1916, he had a cerebral hemorrhage, resulting in partial paralysis of his right arm and side. At this time he also had a violent bronchial cough, and was unable to leave his room. Cerebral hemorrhages recurred, and with each attack the paralysis progressed, and he became practically helpless. He could not get out of bed after December 1, 1916. About December 15th or 16th before the will was written, he developed bronchial pneumonia, and on December 16th was "quite low." He thereafter sustained a gradual decline until his death. The attending physician testified that for a day or two after the occurrence of a cerebral hemorrhage the deceased would be stupid, but that he could be aroused at such times. This physician testified that he did not know whether deceased had lost control of his bodily functions at such time, but both he and another physician testified that such loss of control was common with one in the deceased's condition physically. This physician also testified that he "judged" that the testator would have to be fed. One of the subscribing witnesses testified that on the occasion of the execution of the will the testator tried to talk, but witness could not understand him; that he tried to sign the will, but was unable to do so, and that the lawyer who wrote the will took the testator's left hand, with the pen in it, and made his mark.

[8] It will thus be seen that all the facts testified to by Mrs. Ethel Earle and objected to were established by other evidence practically without contradiction, except as to the ability of the deceased to carry on a conversation at this time, about December 31st, and the evidence of the witness as to the fact that the testator carried on a conversation with no one during those two days is the only evidence that could possibly be held to be harmful under the circumstances. The appellants offered the testimony of one witness at least who testified that the deceased talked in a conversational way up until the day before he died. But the testimony objected to, that "during the portions of the two days he carried on no conversation with any one," really added nothing to the testimony that the same witness had already given, without objection, to the effect that the testator could not talk to the witness. In fact, the testimony that he could not talk would have more weight in establishing the mental and physical condition of the sick man than testimony that he did not "carry on a conversation with any one." He was at this time, according to all accounts, very sick and weak, paralyzed, and helpless; he could talk with difficulty, even when well. So that the fact that he did not carry on a conversation with any one while the witness was present was not a fact that would be likely to have had any weight with the jury, aside from the other testimony, in determining the condition of testator's mind two weeks before, when he executed the will. We have concluded, therefore, that the case ought not to be reversed on account of the admission of this evidence if its admission was error.

[9] It is also contended that the evidence was insufficient to authorize the submission of an issue of mental incapacity or undue influence, and that the answers of the jury to these issues are unsupported by the evidence. In addition to evidence as to facts already stated, there was evidence to the effect that the testator, just before he left Armstrong county, in November, 1916, acted strangely, was not himself, and his conversations had no coherence, and that he was sick at this time. The evidence also portrays the testator as being in this same condition at Topeka, Kan., before arriving at Joseph Cavanaugh's home. The witness testified that when he was in Topeka he did not seem to know what he was doing; that when on the streets he wanted to stop at every place he came to, thinking it was his home. Expert evidence was offered which tended to show that one of the testator's age, suffering from cerebral hemorrhages, and other complications, as the attending physician described, would not be in such mental condition as to be competent to make a will. One of the witnesses who signed the will testified that he was called into the room after the will had been written; that the lawyer who wrote it read the will, and asked the testator if such was his will; that the testator nodded his head; that the testator could hardly talk, and talked to no one, and was practically helpless; that all the subscribing witnesses signed the will before the testator signed it; that the lawyer asked the witnesses to sign, and when the will was presented to testator he could not sign it without assistance, as already stated. This witness, it is true, stated that he thought the testator's mind was sound. The attending physician and the lawyer who wrote the will testified to facts which, if accepted as being unqualifiedly true, showed that the testator was mentally competent to execute the will, and that he was not under any undue influence. The evidence further shows that the attending physician, shortly before the execution of the will, told Joe Cavanaugh "that the old man was mighty bad off, and that if he had

any worldly affairs to be attended to they had better be attended to." The lawyer was called after this, and came to the Cavanaugh home about sundown, and the will was thereafter executed. There were present at the time, or just before the execution of the will, Joseph Cavanaugh, Lula Bergen, Dennis Bergen, Father Hugh Herron, and the lawyer who prepared the will, and who signed it as one of the witnesses; the other witness was the automobile driver who accompanied the lawyer to the Cavanaugh home. There is also evidence to the effect that the testator, before going to Kansas, had repeatedly declared that he did not expect to make a will, but would let his property be divided according to law.

We think the evidence sufficient to support the finding of the jury as to the mental incapacity of the testator. Other statements by the attending physician were shown which tended to discredit his testimony and all the attending facts and circumstances in connection with the prior condition of the testator, and the expert testimony tends to contradict the physician and the lawyer who wrote the will, and is sufficient, we believe, to support this finding of the jury.

[10] There is no evidence which would warrant the conclusion that Dan Cavanaugh exerted any undue influence in the matter of the execution of the will, as Dan Cavanaugh was not present during his father's illness, and had no opportunity of influencing him. The other parties named in the finding of the jury, however, were at the bedside of the testator before and at the time of the execution of the will, and we think the jury were warranted in finding that the testator was in such weakened and helpless condition, mentally and physically, that the execution of the will was not really his act, but that of some one or all of those by whom he was surrounded at the time. Holt v. Guerguin (Tex. Civ. App.) 156 S. W. 584; Rounds v. Coleman (Tex. Civ. App.) 189 S. W. 1086; Clark v. Briley (Tex. Civ. App.) 193 S. W. 425. We are inclined to think that the inclusion of Dan Cavanaugh in the finding of undue influence would not necessarily destroy the effect of other parts of the finding which were supported by the evidence; the undue influence of any one of such parties named was sufficient to have rendered the will invalid. But, at any rate, the finding as to the mental incapacity of the deceased is sufficient to sustain the judgment.

We think the evidence also sustains the finding of the jury that the place of residence of the deceased at the time of his death was in Armstrong county, Tex. However, the disposition we have made of the other propositions presented renders this finding immaterial.

Affirmed.