J. M. RADFORD ET AL. V. CITY OF CROSS PLAINS.

No. 6819.   Decided October 9, 1935.
Rehearing overruled October 30, 1935.
(86 S. W., 2d Series, 204.)

*Smith & Eplen,* of Abilene, *S. W. Marshall* and *W. P. Dumas,* both of Dallas, for plaintiffs in error.

The word "extention" as used in Article 1112, R. S., 1925, has reference to the extension of a complete system of water-works and not merely to the water lines of such system. 25 C. J., 225; Womack v. City of West University Place, 32 S. W. (2d) 930; Flagler v. Hearst, 62 App. Div., 18, 70 N. Y. S., 956; Words and Phrases (3rd Ed.), Vol. 4, p. 136.

*Scarborough & Ely,* of Abilene, for defendant in error.

A municipality under the Act of 1927 had no authority without a vote of the people to encumber its water and sewer plants that it already owned to pay for the cost of construction of a new reservoir and a new pipe line creating a new source of supply for the city. The phrase "or for the extensions"

as used in the Act of 1927 did not authorize a city commission to execute a mortgage on a system that the city already owned and pledge the revenues thereof to build a new system without a vote of the people. Citizens Bank v. City of Terrell, 78 Texas, 450; Foster v. City of Waco, 113 Texas, 354, 255 S. W., 1104; Lasater v. Lopez, 110 Texas, 179, 217 S. W., 373; Choice v. Dallas, 210 S. W., 753; Bluefield Water & Imp. Co. v. Public Service Com. of West Va., 262 U. S., 679, 67 L. Ed., 1176, 43 Sup. Ct., 675; Keel v. Pulte, 10 S. W. (2d) 694.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

The parties will be designated as in the trial court, the City of Cross Plains, Texas, being plaintiff and J. M. Radford and others being defendants. This suit was instituted by plaintiff in the District Court of Taylor County to cancel $67,000.00 of "revenue bonds" issued in the manner hereinafter set out. By appropriate cross-actions the defendants sought to establish the validity of such bonds and to enforce their payment according to their terms. The plaintiff was denied relief in the district court. Defendants obtained judgment validating the bonds and ordering their payment in accordance with the provisions in the contract and ordinances by which they were authorized. The judgment of the trial court was reversed by the Court of Civil Appeals and judgment was rendered in favor of plaintiff decreeing the bonds invalid. A full statement of the pertinent facts will be found in the opinion reported in 73 S. W. (2d) 1093.

Prior to the 26th of August, 1929, the City of Cross Plains had acquired a water system, consisting of wells, pumps and distribution equipment, which had been paid for by the sale of tax securities. On August 26, 1929, the city entered into a contract with the Municipal Engineering Company, Inc., "for the construction of improvements to the water and sewer system of the City of Cross Plains," according to plans and specifications attached to said contract. The specifications attached to the contract are rather general, but all parties have designated the work which was contracted to be done as the building of a dam or water reservoir some five miles from the city and the construction of a pipe line from said reservoir to a connection with the water system. The contract price for this work was $107,000.00, of which $40,000.00 was represented by warrants, and the remaining $67,000.00 by what were designated as "revenue bonds." It is expressly provided

in the contract that the revenue bonds were to be issued in accordance with Articles 1111, 1112, 1113 and 1114 of the Revised Statutes of 1925, as amended by Chapter 194 of the Acts of 1927. Said bonds were to be paid solely from revenues derived from the water and sewer systems of the city, and were to be secured by a mortgage upon said systems, and the income therefrom, and everything pertaining thereto, acquired or to be acquired.

By proper ordinance dated December 11, 1929, the governing body of the city confirmed and ratified said contract, it being designated in the ordinance as a contract "for furnishing all material and labor and constructing improvements to the water works and sewer systems in and for said city, and authorizing the issuing of revenue bonds to evidence the indebtedness therefor." The contract was apparently fully performed, and in due time the revenue bonds provided for were issued and delivered to said Municipal Engineering Company, Inc. The matter was not submitted to a vote of the qualified voters of the city. The bonds on their face provided for payment solely out of revenues derived from the water and sewer systems of the city, designated as the "Special Water Works and Sewer Revenue Bond Fund." The bonds on their face bore the following recital:

"THIS BOND is one of a series of bonds of like tenor and effect, except as to maturity, numbered from one (1) to sixty-seven (67), inclusive, all of said bonds of the denomination of ONE THOUSAND DOLLARS ($1,000.00) each, aggregating in amount SIXTY-SEVEN THOUSAND DOLLARS ($67,000.00), issued for the purpose of the construction of improvements to the waterworks and sewer systems, in and for said City, under and by virtue of Article 1111 et seq., Texas Revised Statutes, 1925, as amended by Chapter 194, Acts 1927, Regular Session, and in pursuance of an ordinance duly adopted by the City Council of said City, and recorded in the Ordinance Records of said City, and to secure the payment of this bond, and the series of which it is one, the City of Cross Plains has executed a First Mortgage or Deed of Trust on its entire waterworks and sewer systems, including the improvements described in said mortgage or Deed of Trust, and all appurtenances pertaining thereto, and has pledged and mortgaged certain income of said waterworks and sewer systems."

It is admitted that these bonds passed to defendants for a valuable consideration and without any actual notice of any

infirmity in same or defects in the title of the party from whom purchased, save and except such as arise from the face of the bonds and such as may be charged as a matter of law from the bonds.

Under the view we have taken of the case it has become unnecessary to decide the question of the constitutionality of the Act of 1927, which was held unconstitutional by the Court of Civil Appeals, and that question has been left entirely open.

■ It has been definitely settled that an attempt to encumber the water or sewer system of a city or town, or the income derived therefrom, for more than $5,000.00, without same is authorized by a majority vote of the qualified voters of the city or town, except for the purposes expressly stated in Article 1112 of the Revised Statutes of 1925 and its amendments, is in violation of Article 1112 and is void. City of Dayton v. Allred, 123 Texas, 60, 68 S. W. (2d) 172.

As the action of the city in this instance was an attempt to encumber the entire water and sewer systems, with the income to be derived therefrom, for a sum largely in excess of $5,000.00, without a vote of the qualified voters of the city, we need but ascertain whether or not the purpose for which this was done was one provided for by Article 1112. As it is not contended that the bonds were issued for purchase money or to refund any existing indebtedness, the matter is further narrowed and we have only to determine whether or not they were issued for "extensions," as that term is used in the law. Defendants seek to uphold the validity of the bonds on the ground that they were issued for extensions within the meaning of that term as it appeared in the Act of 1927.

By Article 1111 it is provided that cities and towns such as the City of Cross Plains was at the time of the issuance of these bonds have power to mortgage and encumber the light system, water system, or sewer system, either, both or all, and the franchise and income thereof, and everything pertaining thereto, acquired or to be acquired to secure the payment of funds to (a) purchase same, or (b) to purchase additional water powers, (c) riparian rights; or, to (d) build, (e) *improve,* (f) enlarge, (g) *extend,* or (h) repair such systems.

Article 1112 as amended by the Acts of 1927 read as follows:

"No such light, water, or sewer system shall ever be sold until such sale is authorized by a majority vote of the qualified

voters of such city or town; nor shall same be encumbered for more than five thousand dollars, except for purchase money, *or for extensions,* or to refund any existing indebtedness, until authorized in like manner. Such vote in either case shall be ascertained at an election, of which notice shall be given in like manner as in cases of the issuance of municipal bonds by such cities and towns." (Emphasis ours.)

Article 1113 among other things providing:

"Whenever the income of any lighting, water, or sewer systems shall be encumbered under this law, the expense of operation and maintenance, including all salaries, labor, materials, interest, repairs and *extensions,* necessary to render efficient service, and every proper item of expense shall always be a first lien and charge against such incomes." (Emphasis ours.)

■ We do not find it necessary to define just what the Legislature meant by "extensions" in Article 1112, as it is manifest from a reading of the act as a whole that it was intended to have a meaning different from the meaning of the terms "purchase additional water powers, riparian rights, or to build, improve, enlarge—or repair," as used in Article 1111. It has direct relation to the term "extend" in said article. The power of the city to do what it attempted to do was limited to the accomplishment of the objects expressly mentioned in Article 1111, and there was the further limitation that the systems could not be encumbered without a vote of the people except for "extensions." It is evident, therefore, that to sustain the action of the city in issuing these bonds it must be held that the word "extensions," as used in Article 1112, includes the work that was done in this instance; that it is a comprehensive term, and is not merely referable to the power to extend. It is further obvious, however, that if it is to be given a comprehensive meaning, it must be considered as including each and all of the powers given in Article 1111. If it is not to be limited to the power to "extend" then there is no reason for limiting it to any one or more of the other terms used. But this is not the defendants' chief difficulty. The bonds in this instance were issued to construct "improvements," and not extensions. They must, therefore, take the position that "improvements" is a comprehensive term and is not merely referable to the power to "improve." If, therefore, "improvements" is construed as a comprehensive term it must not only include the power to improve, but must be

construed as also including all the other powers given by Article 1111. The argument leads to the result that improvements as used in the bonds and extensions as used in Article 1112 would be synonymous. If the Legislature had intended this to be the meaning of these terms, it would not have specifically enumerated the various powers given in Article 1111, but would have merely used the one term "improve," and would have used the word "improvements" in Article 1112 instead of the word "extensions."

We are of the opinion, therefore, that the parties in issuing these bonds intended to make their action referable to the power to improve, and that such power, however it may be defined, is by the statute itself different from the power to extend or make extensions. We are of the opinion that the parties were attempting to invoke the power to improve rather than the power to extend; but if they were not and the word "improvements" be given a comprehensive meaning, then it is evident that it is so comprehensive that any purchaser of the bonds would (in order to determine whether or not the law authorized same) be required to ascertain at his peril the exact purpose for which same were issued. If the purpose is not fully disclosed by the contract, ordinances and bonds, nevertheless it is undisputed that the main purpose was to acquire a dam or water reservoir. This being true, the power to issue the bonds was referable directly to the power to "purchase additional water powers and riparian rights," and it is plain that this power could not be accomplished without a vote of the people.

■ We are, therefore, of the opinion that the bonds themselves, having been issued to construct improvements, negative the contention that they were made for extensions, as that term is used in the statute, and that the city was without authority to issue same without a vote of the qualified voters.

These bonds having been issued without a vote of the people, in direct contravention of the statute, were void. As the city not only had no authority to issue same without a vote of the people, and as they were issued in violation of law, the city was not estopped to question their validity. Citizens' Bank v. City of Terrell, 78 Texas, 450, 14 S. W., 1003.

■ It is insisted, however, that though the bonds and mortgage involved in this controversy were invalid originally, they were validated by Section 7 of the Act of 1933. (Acts 43rd Leg., Reg. Sess., chap 122.) By the first three sections of this Act,

Articles 1111, 1112 and 1113 were amended in various respects. The provisions of Sections 4, 5 and 6 have no material bearing on the question in hand. Section 7 reads as follows:

"Sec. 7. The actions of all cities and towns and of all officials in passing ordinances, adopting resolutions, executing securities and delivering securities to accomplish the objects *permitted under this Act* are hereby expressly authorized and validated in like manner as if this law had been effective at the time of such actions, subject to the provisions of Section 5." (Emphasis ours.)

As we construe this Act it attempted to validate only such actions as were done to accomplish objects permitted under the law as amended by the Act. Amended Article 1112, as same appears in Section 2 of the Act, provided that no water or sewer system could be encumbered for more than $5,000.00, except for purchase money or to refund any existing indebtedness lawfully created, until authorized by a majority vote of the qualified voters of such city or town. This Act omitted the words "or for extensions." Therefore the cities did not have power under that Act to issue the bonds here involved, without a vote of the people and therefore Section 7 was not intended to validate such action.

We are not called on to decide whether or not the plaintiffs in error have a right to reclaim the reservoir and the pipe line which were constructed under the contract, as the city has made a disclaimer of any right or title to said property.

For the reasons stated herein the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by Supreme Court October 9, 1935.

Rehearing overruled October 30, 1935.