**HAYWARD et al. v. CITY OF CORPUS CHRISTI et al.**

**No. 2666.**

Court of Civil Appeals of Texas. Waco.

July 11, 1946.

Rehearing Denied July 27, 1946.

Wood, Hoffman, King & Dawson, of New York City, Kleberg, Eckhardt, Mobley & Roberts and Tarlton & Koch, all of Corpus Christi, Andrews, Kurth, Campbell & Bradley, of Houston, Terry, Cavin & Mills, of Galveston, and Brewer, Matthews, Nowlin & Macfarlane, of San Antonio, for appellants Fred P. Hayward et al.

Ward & Brown, of Corpus Christi, Moursund, Ball, Moursund & Bergstrom, of San Antonio, Owen D. Cox, City Atty., of Corpus Christi, Moody & Robertson (on appeal only), of Austin, and Hodge Thompson, of Corpus Christi, for appellant City of Corpus Christi.

Eugene DeBogory, of Dallas, and J. D. Williamson, of Waco, for appellant Republic Nat. Bank of Dallas, trustee.

Wayman & Kleinecke, of Galveston, for Sol Bromberg et al.

Baker, Botts, Andrews & Wharton, of Houston, for Guardian Trust Co. of Houston.

Coke & Coke, of Dallas, for First Nat. Bank in Dallas.

HALE, Justice.

This suit involves $2,626,000 of outstanding water revenue bonds issued by a municipality for the purpose of expanding and improving its water works system. The bonds were not submitted to a popular vote for approval. The trial court held in effect that the bonds were invalid because their issuance had not been legally authorized but that the municipality was liable in equity to the bondholders for the reasonable value of the properties it had acquired through the issuance thereof, together with the reasonable rental value of such properties, less certain credits and deductions. Accordingly, based upon findings by the court and jury, a money judgment was rendered against the municipality and in favor of the bondholders. An extended statement is deemed necessary to an understanding of what we regard as the controlling issues presented on the appeal.

The City of Corpus Christi, Texas, hereafter referred to as the city, entered into a written contract with Smith Brothers, Inc., a Texas corporation, hereafter referred to as the contractor, under date of July 21, 1927. By the terms thereof the contractor agreed in substance to furnish $310,000 for the purchase of lands and easements along the Nueces River at a point about 40 miles distant from the city and to furnish all the labor and materials necessary to erect and construct thereon according to the plans and specifications of the city's engineers "certain improvements," consisting of a dam, reservoir and elevated tank, to be operated by the city as a part of its expanded water works plant. The city agreed in effect to reimburse the contractor for the money so furnished and to pay for such labor and materials in accordance with unit prices set out in its plans and specifications and in the bid submitted thereunder by the contractor, such payments to be made with revenues to be derived from the operation of the plant, the time and amounts of such payments to be evidenced by legally issued water revenue bonds which were to be secured by a deed of trust executed in legal form covering all of the city's water system.

Contemporaneously with the foregoing contract and in pursuance thereof, the city executed a trust indenture with Republic Trust & Savings Bank of Dallas as trustee covering its entire water system, then owned and thereafter to be acquired, for the purpose of securing the payment of $2,000,000 of its water revenue bonds, each bond so issued to be dated August 1,

1927, each to mature as therein specified and each to bear interest at the rate of 6% per annum, the interest to become payable semi-annually as evidenced by interest coupons attached to each bond. After the work had been in progress for approximately one year it was ascertained that the preliminary estimates as to the cost of lands, easements and materials necessary to complete the project according to the original plans and specifications had been too low. Thereupon, a supplemental contract was entered into and two additional bond issues were authorized and trust indentures executed in order to complete the project, viz.: one dated August 1, 1928, in the sum of $350,000 and the other dated September 1, 1929, in the sum of $325,000. All of the $2,725,000 of bonds so authorized and issued were delivered to the contractor from time to time in accordance with the contracts, based upon estimates as the work progressed.

In an ordinance duly adopted by the city on January 30, 1930, authorizing the last delivery of bonds to the contractor, it was recited that the contractor had fully complied with all the terms, stipulations and conditions of the original and supplemental contracts, had completed the structures therein contemplated in accordance with the plans and specifications provided therefor, that the city did thereby fully and finally accept the work, that it had received full value and consideration for its bonds so issued and delivered and that the contractor and its surety be and they were thereby fully discharged from further obligation under the contractor's performance bond.

In November, 1930, a part of the dam structure was washed out. Thereafter the city applied to the Reconstruction Finance Corporation for a loan of $500,000 with which to rehabilitate the dam. In compliance with the requirements of the RFC as a condition precedent to making the loan, approximately 90% of the holders of the city's outstanding bonds agreed through a committee to reduce the rate of interest on their bonds to 4%, reduce the sinking fund requirements under the trust indentures, extend the maturities of their respective bonds for 12 years and

subordinate their liens and rights to the proposed issue of $500,000 of revenue bonds in favor of RFC. The application was then granted, the loan was consummated, the contemplated rehabilitation work was completed and the bonds so issued to RFC were subsequently paid off and discharged.

On September 24, 1932, W. F. Harris instituted suit in the District Court of Nueces County in the name of himself and of the City of Corpus Christi upon the relation of himself. The defendants in such suit were the city, its officers, the trustee under each of the three trust indentures hereinbefore referred to, the contractor, and "unknown owners and holders" of the $2,725,000 of bonds theretofore issued by the city. The objects of the suit were to cancel all of the bonds and the three deeds of trust securing the payment thereof and to recover damages on behalf of the city for alleged breach of contract by Smith Brothers, Inc. The trial court sustained numerous special exceptions and a general demurrer to the petition of plaintiff and dismissed the case. Upon appeal to the Court of Civil Appeals at San Antonio the judgment of the trial court was affirmed, the court holding in its opinion of affirmance, among other things, that Harris did not have authority to maintain the action on behalf of the city and that the bonds and deeds of trust were valid, even though their issuance and execution had not been authorized by a majority vote of the qualified voters of the city. See: City of Corpus Christi ex rel. Harris v. Flato, Tex.Civ.App., 83 S.W.2d 433, error dismissed, hereafter referred to as the "Flato case."

The city paid all interest maturing on the $2,725,000 of bonds according to the terms thereof until February 1, 1937, in the total aggregate sum of $1,022,563, and it had also paid off $99,000 on the principal of the bonds up to that time. It then declined to make further payments, either of principal or interest, on any of the remaining bonds. Thereupon Fred P. Hayward, Fred W. Hubbell and Francis P. Sears, as members of a bondholders protective committee, instituted suit against the city in the United States District Court for the Southern District of Texas seeking recov-

ery of $51,610 on past due interest coupons attached to certain of the outstanding bonds. The trial of the case resulted in judgment for the plaintiffs but upon appeal to the Circuit Court of Appeals for the Fifth Circuit the judgment was reversed with instructions to dismiss the suit, the court holding in its opinion that the bonds to which the interest coupons had been attached were invalid because their issuance had not been authorized by a majority vote of the qualified electors of the municipality. See: City of Corpus Christi v. Hayward, 5 Cir., 111 F.2d 637, hereafter referred to as the "Hayward case."

The present suit was instituted in the District Court of Nueces County on January 28, 1941, by Fred P. Hayward, Fred W. Hubbell, Francis P. Sears and John Stewart, hereafter referred to as plaintiffs or bondholders. The cause pended in the court below for more than four years before it was tried on its merits. During that period of time the court heard and passed upon various matters raised by preliminary pleas and exceptions relating to parties and pleadings. All holders of bonds, other than plaintiffs, became parties to the suit and they will hereafter be referred to as intervenors or bondholders. The parties are too numerous and their pleadings too voluminous to be here set forth in any detail. It must suffice merely to say that in our opinion all necessary and proper parties either intervened in the suit or were properly brought before the court prior to trial and the trial pleadings of the respective parties were sufficient to raise and support all of the facts and contentions herein recited and discussed. The suit in its final form was prosecuted by plaintiffs and intervenors as bondholders against the city, the trustee or its successor in trust in each of the three trust indentures, the contractor, the members of the latter's last board of directors as statutory trustees in dissolution of said corporation, and others.

The general purpose of this suit was to enforce the alleged rights of plaintiffs and intervenors under the $2,626,000 of outstanding bonds theretofore issued by the city. Based upon extensive allegations in their trial pleadings they sought (1) recovery on the contracts, bonds and trust indentures securing their payment, according to the tenor and effect thereof; and (2) in the alternative, recovery of the lands, dam structure, reservoir and elevated tank received by the city from the contractor, together with an amount of money equal to the reasonable rental value of such properties during the period of time the city had enjoyed their use and benefit; and (3) in the further alternative, recovery of a sum of money equal to the amount remaining unpaid on the outstanding bonds, including principal and accrued interest, or a sum of money equal to the reasonable value of such properties together with the reasonable rental value thereof during the period of time they had been so used by the city.

By special exceptions and affirmative pleas the city challenged the validity of the contracts, bonds and trust indentures securing their payment upon the ground that the issuance and execution thereof had not been authorized by a majority vote of its qualified voters. It also resisted on various additional grounds all alternative relief sought by plaintiffs and intervenors but specifically pleaded that in all events the properties in controversy were necessary to the public welfare of the city in supplying water to its citizens and if any relief should be awarded to the bondholders then it prayed that such properties be awarded to it.

Republic Bank & Trust Co. of Dallas, successor in trust to Republic Trust & Savings Bank of Dallas, hereafter referred to as the trustee, by cross-action against the bondholders and the city, sought (1) recovery of the title to the properties described in the trust indenture to which its predecessor was a party, for the benefit of the holders of the bonds therein described; (2) reasonable attorneys' fees and expenses to be fixed and made a first charge and lien upon such properties; and (3) an adjudication of the priorities and rights of all holders of outstanding bonds. After all holders of outstanding bonds had become parties to the suit and before trial of the case on its merits the court sustained a plea in abatement on behalf of the city to the cause of action asserted by the trustee and dismissed the same, "save and except

as to the recovery of attorneys' fees and expenses which issue shall be tried with the main case."

By answer and quit-claim duly acknowledged before a notary public each member of the last board of directors of the contractor affirmatively pleaded that the bondholders were entitled to "all the rights, titles, interests and equities of the said Smith Brothers, Inc. as against the City of Corpus Christi and in the dam and reservoir and other properties involved herein, and hereby disclaims all right, title and interest therein in favor of plaintiffs and intervenors."

Upon the conclusion of all the evidence the bondholders and the city each filed an extensive motion for a peremptory instruction and each motion was overruled. All parties agreed in open court that the issue of attorneys' fees to be awarded to the trustee, if any, should be left to the determination of the court on both the law and the facts. The court then submitted to the jury for its determination numerous special issues on questions of value, only, as related to the properties in controversy. In response to such issues the jury found in effect that (1) the present reasonable value (as of May 5, 1945) of the dam structure, lands and reservoir and elevated tank was $2,142,448.86; (2) such value had been enhanced by reason of rehabilitation work and betterments made subsequent to the time a part of the dam structure was washed out in November, 1930, in the amount of $700,000; (3) the present reasonable value of such rehabilitation work and betterments was $600,000; and (4) the reasonable rental value of such properties for the period of time they had been used by the city was $889,314.22.

The court rendered judgment on June 25, 1945, reciting that "it appearing to the court that plaintiffs and intervenors are entitled to recover the properties sued for but that on account of such properties being necessary to the city in the service of the public the ownership of the properties and structures should be vested and continued in the City of Corpus Christi against the claims of all parties hereto, and that the City of Corpus Christi should be quieted in its title and in lieu of said properties and structures the plaintiffs and intervenors are entitled to an award of a money judgment in accordance with the verdict of said jury and the findings of the court against the City of Corpus Christi; and it is accordingly so adjudged." The judgment further recites various credits and deductions from the findings of the jury on the questions of value by reason, among other things, of payments made by the city to the bondholders more than four years prior to the institution of the suit, the reasonable rental value of the properties which accrued and became due more than two years prior to the institution of the suit and the reasonable value of rehabilitation work and betterments made upon the properties by the city subsequent to November, 1930. After such credits and deductions had been allowed, it was ordered, adjudged and decreed that the plaintiffs and intervenors do recover of the city the sum of $1,160,452.78, with interest thereon from May 5, 1945, until paid, such recovery being apportioned among the bondholders in the proportions therein set forth, and all court costs. Judgment was further rendered in favor of the trustee for the sum of $7,500 chargeable against the bondholders, jointly and severally, as their interests were made to appear in the judgment.

The bondholders, the city and the trustee each filed and presented motion for new trial and each motion was overruled. From the action of the court in rendering judgment and overruling their motions the bondholders, the city and the trustee each perfected appeal to the Court of Civil Appeals at San Antonio. The case was thereafter transferred by order of the Supreme Court from the San Antonio Court of Appeals into this Court where it has been properly submitted upon briefs and oral arguments.

### Opinion.

The contentions of the parties to the appeal are presented under 67 points of error contained in the three original briefs of appellants, respectively, and numerous counterpoints in various reply briefs. Obviously, it would not be practicable here to set forth and discuss in detail all of the points thus presented. Hence we shall at-

tempt to group the respective contentions and discuss them together in their relation to the following questions of law, viz.: (1) Whether the bonds and trust indentures securing their payment are invalid; and, if so, (2) whether the bondholders are entitled to recover just compensation for the properties in accordance with the values found by the jury, less proper credits and deductions; and, if so, (3) what credits on and deductions from such findings are properly allowable.

Under appropriate points in their brief the bondholders contend that the trust indentures and outstanding bonds secured thereby are valid obligations and are legally enforceable against the city in accordance with their terms. They further assert that the former judgments in the Flato case, 83 S.W.2d 433, are res judicata in so far as the validity of the bonds and deeds of trust is concerned and that the city is thereby estopped to deny their validity in this suit. The trustee presents similar contentions. On the contrary, the city denies such contentions and asserts that the bonds and trust indentures are invalid and void because their issuance was not authorized by a majority vote of its qualified voters. It further says the former judgments in the Hayward case, 111 F.2d 637, are res judicata on the issue relating to the invalidity of the bonds and that the bondholders are thereby estopped from denying their invalidity in this proceeding.

■ The doctrine of res judicata is grounded upon the fundamental principle that any controverted matter finally adjudicated one time should not be litigated again as between the same parties or those in privity with them. 30 Am.Jur. 910, Sec. 165, and authorities. It is the settled law of this state that any right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense cannot be disputed in a subsequent suit between the same parties or their privies. 26 Tex.Jur. 11, Sec. 353, and authorities. However, no litigant may be estopped from having his day in court by reason of the provisions of a prior judgment unless he or some person with whom he is in privity was a party to the former judgment.

■ We are in full accord with the holding of the San Antonio Court of Appeals in the Flato case to the effect that Harris did not have authority to maintain that suit, either in his own name or in the name of the city upon his relation as a taxpayer. If Harris did not have authority to maintain the suit in the name of the city as plaintiff, then we fail to see how the judgment of the trial court in merely dismissing the case could constitute any adjudication adverse to the interest of the city or in favor of its adversaries.

■ In a taxpayer's suit for cancelation of bonds issued by a city, the owners and holders of such bonds are "necessary" parties. Lowe v. City of Del Rio, 132 Tex. 111, 122 S.W.2d 191. The "unknown owners and holders" of the city's bonds were not parties to the Flato case except as they might have been there represented by the trustees under the three deeds of trust.

Moreover, at the time when the trial court rendered its judgment of dismissal in the Flato case, there was no existing controversy between the city on the one hand and any of the bondholders or trustees on the other hand. The city had complied in all respects with the obligations imposed upon it under the terms of the bonds and trust indentures up to that time and had not indicated any intention on its part ever to assert that such instruments or any of them were invalid. Neither of the primary causes of action here declared upon by the bondholders and the trustee had then accrued.

In passing upon the appeal of the Flato case it was the duty of the appellate courts to review the record as it had been made in the trial court. If upon the record so made it appeared that Harris did not have authority to maintain the suit, then it was unquestionably the duty of the trial court to dismiss the same and it was likewise the duty of the appellate courts to affirm the judgment of dismissal, without regard to whether the bonds and trust indentures were valid or invalid. And so, even though the Court of Civil Appeals expressly held

in its opinion that the instruments there sought to be canceled were valid, we are of the opinion that the judgments actually rendered in that case did not constitute an adjudication to the effect that such instruments were valid as against the city or in favor of the bondholders. Nickelson v. Ingram, 24 Tex. 630, 631; Philipowski v. Spencer, 63 Tex. 604; Cavanaugh v. Cavanaugh, Tex.Civ.App., 238 S.W. 1019, pt. 5, error refused.

■ The four plaintiffs in this suit hold $2,033,000 of the outstanding bonds. Three of the plaintiffs herein were plaintiffs against the city as defendant in the Hayward case. They had authority to maintain that suit and the court had jurisdiction to try it. The case was tried fully on its merits. During the trial the same identical contracts, trust indentures and bonds declared upon in this present suit were admitted in evidence and as a result of such trial it was finally adjudicated that the interest coupons upon which a recovery was there sought were invalid because the bonds to which they were attached were invalid in that the issuance thereof had not been submitted to and approved by a vote of the city's qualified electors, as required by the provisions of Art. 1112 of Vernon's Tex. Civ.Stats. Consequently, we have concluded that the judgments in the Hayward Case are res judicata on the invalidity of the bonds as between the parties to that suit and that the plaintiffs there are now estopped by reason of the judgments in that case from again asserting here as against the city the validity of their bonds. Tadlock v. Eccles, 20 Tex. 782, 73 Am.Dec. 213; Cook v. Burnley, 45 Tex. 97; Mayfield Co. v. Rushing, 133 Tex. 120, 127 S.W.2d 185, 124 A.L.R. 1210; John Hancock Mutual Life Ins. Co. v. Dameron, Tex.Civ. App., 131 S.W.2d 122, pt. 1 and authorities.

■ In addition to what has been said on the issues of res judicata and estoppel by judgment, it further appears to us as an original proposition that the general purpose for which the bonds were issued does not come within the exceptions enumerated in Art. 1112 of Vernon's Tex.Civ. Stats. By the terms of this statute it is provided in substance that no municipal water system, such as is here involved, shall ever be sold or encumbered for more than $5,000 "except for purchase money, or for extensions, or to refund any existing indebtedness," until authorized by a majority vote of the qualified voters.

The bonds and trust indentures declared upon were not issued or executed to refund any existing indebtedness of the city, or for the purchase or extension of its water system unless it may be said that the contemplated cost of lands and easements when acquired constituted extensions. Under all the facts in this case we seriously doubt whether it may be said that any of the purposes for which any or all of the bonds were issued was to provide purchase money or extensions within the meaning of the statute. But, be that as it may, the bonds were issued en masse and in all events a major portion thereof were undoubtedly issued for the purpose of having improvements erected and constructed upon the additional lands and easements after the system had been so extended. In our opinion the bonds so issued for improvements in excess of $5,000 are invalid. City of Corpus Christi v. Hayward, 5 Cir., 111 F.2d 627, certiorari denied 311 U.S. 670, 61 S. Ct. 30, 85 L.Ed. 430; City of Hamlin v. Brown-Crummer Inv. Co., 5 Cir., 93 F.2d 680, certiorari denied 303 U.S. 664, 58 S. Ct. 831, 82 L.Ed. 1122; Radford v. City of Cross Plains, 126 Tex. 153, 86 S.W.2d 204; Citizens Bank v. City of Terrell, 78 Tex. 450, 14 S.W. 1003; City of Dayton v. Allred, 123 Tex. 60, 68 S.W.2d 172; McCann v. Akard, Tex.Com.App., 68 S.W.2d 1033; City of Richmond v. Allred, 123 Tex. 365, 71 S.W.2d 233; City of Houston v. Allred, 123 Tex. 334, 71 S.W.2d 251.

Therefore, we hold that the bonds and trust indentures here sued upon are invalid, that the city is not estopped from asserting their invalidity in this suit and that such instruments are not now legally enforceable against the city according to their terms. Because the bonds, interest coupons and trust indentures are thus invalid and unenforceable, we overrule all points and assignments of error on behalf of the bondholders in support of their contentions that they are entitled to a recovery on such instruments according to the terms thereof

or to a money judgment equal to the amount remaining unpaid on the outstanding bonds. For the same reasons we overrule all points and assignments on behalf of the trustee in support of its contentions that it is entitled to recover the title to the properties set forth in its trust indenture for the benefit of the holders of the bonds therein described, or to an adjudication of the priorities and rights of all holders of outstanding bonds.

We shall next consider the question as to whether the bondholders are entitled to recover a money judgment against the city for the reasonable value of the properties in controversy and of.their use, less proper credits and deductions. Under numerous points in its brief the city contends that no such right was shown, either by pleadings or evidence, and that the trial court should have sustained its motion for a peremptory instruction because, among other reasons, neither the contractor nor the bondholders had any equitable right to reclaim the land and structures in controversy or to have a trust impressed thereon for their benefit. The city further says that if either of such rights ever existed the bondholders were estopped by laches from asserting the same and the enforcement thereof was barred by the four and five year statutes of limitations. On the other hand, the bondholders contend if their bonds are invalid and unenforceable at law then as between the city, on the one part, and themselves as successors to the contractor's rights, on the other part, the beneficial, equitable title to the properties did not pass to the city but remained in the contractor and its successors in right, while the city held the legal title in trust for the benefit of the contractor and bondholders. They further say they are not estopped by laches or barred by .any applicable statute of limitations from the enforcement of their equitable right to have the properties returned to them or to receive the equivalent thereof in value.

■ We think the general rule applicable to the foregoing contentions in their relation to the facts of this case is well stated in 93 A.L.R. 442, as follows:

"* * * where, under a contract which is merely invalid and not fraudulent or malum in se, one has furnished to a municipality, or other political subdivision, real or personal property, whether or not enhanced by his own labor, which property the public fails to pay for, he may upon equitable terms recover it in specie, if recovery may be had without material injury to other property and without causing the public any inconvenience other than results from depriving it of that to which it has no just claim."

■ The contract here involved was neither fraudulent nor malum in se. It was entered into in good faith by the contracting parties for useful purposes. It was completely performed by the contractor to the satisfaction of the city as evidenced by the ordinance of January 30, 1930. The only reason it cannot now be enforced according to its terms is because the bonds and trust indentures which the city gave in consideration for its execution and performance were not authorized by popular vote as required by statute. As said by Mr. Justice Fields, speaking for the Supreme Court of the United States, in the early case of Marsh v. Fulton County, 10 Wall. 676, 19 L.Ed. 1040:

"The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation."

It thus appears to us that the contractor would have been equitably entitled under the facts of this case either to recover the properties which the city obtained from and through it or in lieu of such restitution to recover just compensation for the same. City of Parkersburg v. Brown, 106 U.S. 487, 1 S.Ct. 442, 27 L.Ed. 238; Chapman v. Board of County Com'rs of Douglas County, 107 U.S. 348, 2 S.Ct. 62, 27 L. Ed. 378; Fairbanks, Morse & Co. v. City of Wagoner, Okl., 10 Cir., 86 F.2d 288; Nuveen v. Board of Public Instruction, 5 Cir., 88 F.2d 175, certiorari denied 301 U. S. 691, 57 S.Ct. 794, 81 L.Ed. 1347; City of San Antonio v. French, 80 Tex. 575, 16

S.W. 440, 26 Am.St.Rep. 763; City of Fort Worth v. Reynolds, Tex.Civ.App., 190 S.W. 501; Sluder v. City of San Antonio, Tex. Com.App., 2 S.W.2d 841; Austin Bros. v. Montague County, Tex.Com.App., 10 S.W. 2d 718; City of Waco v. Murray, Tex.Civ. App., 137 S.W.2d 1062, pt. 1, error dismissed.

By acquiring all of the outstanding bonds which were issued and delivered to the contractor, the bondholders have become subrogated in equity to all rights and equities which could have been successfully asserted in this case by the contractor in the first instance. 39 Tex.Jur. 754, Sec. 2; 50 Am. Jur. 693, Sec. 15; Faires v. Cockerell, 88 Tex. 428, 31 S.W. 190, 639, 28 L.R.A. 528; Vasser v. City of Liberty, 50 Tex.Civ.App. 111, 110 S.W. 119; Galbraith-Foxworth Lumber Co. v. Long, Tex.Civ.App., 5 S. W.2d 162, pt. 10 and authorities.

■ Since the properties in controversy were necessary to the city in the service of the public, we think it was well within the province of the trial court, in the sound exercise of its broad chancery powers, to deny to the bondholders a recovery of the properties and to vest and continue the ownership thereof in the city against the claims of all parties, provided the bondholders were awarded just compensation for the same. But in good conscience the city ought not to be permitted in this suit (1) to defeat the right of the bondholders to recover on the bonds and trust indentures solely because their issuance was not legally authorized, (2) retain the properties which had been acquired through the issuance of such illegal instruments because such properties were necessary to it in the service of the public and (3) at the same time deny and escape liability to pay the bondholders the reasonable value of such properties and of their use because the enforcement of such rights and liabilities was barred by either the four or five year statute of limitations. Manifestly, the end result of such pyramidal process of reasoning would be to circumvent and defeat the natural obligation which inevitably rests upon the city to do justice. In our judgment, such wrongful result cannot be required or justified either at law or in equity.

■ The equitable doctrine of laches is based upon the same fundamental principles which underlie the legal concept of limitations. As a general rule equity follows the law. Accordingly, under the blended system of law and equity prevailing in this state, our courts ordinarily apply the doctrine of laches in consonance with corresponding applicable statutes of limitations.

■ In passing upon the question of limitations we do not find it necessary to determine whether the provisions of the five year statute as embraced in Art. 5509 of Vernon's Tex.Civ.Stats. or the four year statute as embraced in Art. 5529 are applicable to either of the alternative recoveries sought by the bondholders because in our opinion neither statute was a bar to the enforcement of either right so asserted. The primary purpose of the suit was to enforce the contracts, bonds and trust indentures according to their terms. The enforcement of that right, if any, was not barred by the four or the five year statute of limitations because that asserted cause of action did not accrue until February 1, 1937. By insisting upon the invalidity of the bonds and trust indentures securing their payment, the city's possession of the properties in controversy thereupon ceased to be that of mortgagor under an express trust and thereby became that of a trustee under a constructive or resulting trust. No statute of limitations would begin to run against the right of the bondholders to enforce the latter trust relationship until the city repudiated the trust and notice of such repudiation was brought to the bondholders. Cole v. Noble, 63 Tex. 432; Hand v. Errington, Tex.Com. App., 248 S.W. 25, pt. 2; Tennison v. Palmer, Tex.Civ.App., 142 S.W. 948, pt. 4; Hamilton v. First National Bank of O'Donnell, Tex.Civ.App., 155 S.W.2d 626, pt. 5, error refused; Old Nat. Life Ins. Co. v. Jerusalem Lodge, Tex.Civ.App., 192 S.W.2d 921, pt. 14.

There is no evidence in this case that the city repudiated its trust relationship

as trustee under a constructive or resulting trust in so far as its possession of the properties is concerned, or that notice of such repudiation was brought home to the bondholders, until the city filed its pleading in this suit. On the contrary, as late as November 23, 1939, the city filed a pleading in a cause then pending in the federal court styled John B. Sharp v. City of Corpus Christi et al., relating to the bonds and properties here involved, wherein the city disclaimed all title and interest in the structures erected for it by the contractor and affirmatively pleaded that it stood ready to deliver such properties to their rightful owner or owners. Therefore, if said Art. 5509 applied to either or both of the alternative recoveries sought, it would not bar either because the possession of the city had not been "adverse" for five years. But if Art. 5529 were applicable to either or both of the alternative recoveries sought, and even though the city were not estopped from asserting the same as a bar to either, the results would be the same because neither cause of action had accrued so as to set in operation the running of the statute against either for as long as four years prior to the time when such actions were brought.

Because we are thus of the opinion that the bondholders were and are entitled in equity to recover from the city just compensation for the properties in controversy in accordance with the reasonable values found by the jury, less proper credits and deductions, that they are not estopped by laches, stale demand, or otherwise, from asserting such right and that the enforcement thereof is not barred by any applicable statute of limitations, we overrule all points and assignments of error presented on behalf of the city.

 What credits and deductions, then, were and are properly allowable against the values so found? The findings on the values of the properties in the total sum of $2,142,448.86 were broken down by the jury as follows: (a) Dam structure, $1,932,448.86; (b) elevated tank, $30,000; and (c) lands and reservoir, $180,000. Their findings on rental values of the properties in the total sum of $889,314.22

were also broken down in terms of such values for each year from and including 1930 to the date of trial. Each party pleaded the two and four year statutes of limitations against the other.

The exact formula which the trial court applied in arriving at the amount of recovery awarded to the bondholders is not entirely clear. Of the rental values found by the jury in the total sum of $889,314.22, the evidence shows and the court expressly found in the judgment that the sum of $466,521 accrued within two years prior to the filing of the suit and that interest on such unbarred rents computed at 6% per annum to May 5, 1945, amounted to $75,337.50. After setting forth the findings of the jury and the material facts shown by the undisputed evidence, the judgment decrees that the bondholders do recover of the city "the value of said properties, rentals, accrued and becoming due thereon within two years prior to the filing of this suit, together with interest on such rentals computed at the legal rate to May 5, 1945, less proper deduction for amount expended by the City of Corpus Christi in improvements, the total of which is the sum of $2,684,307.36, less the value of the repairs and improvements and payments on account of principal and interest on said bonds, and less the proportionate part of the rentals on said improvements after such improvements were made by the City, after deducting from such payments of interest the rentals accrued and becoming due more than two years prior to the filing of this suit, aggregating $1,523,854.78, for which judgment is rendered against the City of Corpus Christi in the principal sum of $1,160,452.58, together with interest at the legal rate of 6% per annum from May 5, 1945, until paid." It thus appears that the bondholders were denied any recovery for the rental values which accrued more than two years prior to the filing of the suit and that the city was allowed credits against the total value of the entire properties and unbarred rents and interest as follows: (1) The value of improvements made by the city in the sum of $600,000; (2) payments made on principal of the bonds in the sum of $99,000; (3) payments made on interest in

the sum of $1,022,563, less barred rentals in the sum of $422,793.22, making a net credit of $599,769.78; and (4) the city's proportionate part of the rentals on account of improvements made by it, such credit necessarily being in the sum of $225,084.80.

Under various points in their original brief the bondholders challenge the correctness of all credits and deductions thus allowed to the city on numerous grounds and say in effect that they were entitled under the verdict of the jury to an award in the sum of $2,684,307.36. By counterpoints in its reply brief the city asserts in substance that all credits and deductions so made were properly allowable.

Notwithstanding the able arguments of counsel for the bondholders and their strong appeal to the conscience of the court on the broad equities of the case as a whole, we cannot say there was error in allowing credits to the city in the sums of $600,000 and $99,000, respectively. The improvements were made by the city with the knowledge, consent and cooperation of the bondholders. Since such improvements necessarily enhanced the value of the entire properties, we think the city thereby acquired an equitable interest in such properties to the extent of the found value of the improvements so made. Also, because the bondholders or their predecessors in right had received $99,000 in payment on the principal obligation which the city attempted to incur under the contract, it appears to us that this credit was properly allowable even though such payments were voluntarily made more than four years prior to the filing of the suit. In our opinion, however, the credits of $599,769.78 and $225,084.80, respectively, were each erroneously allowed to the city for reasons which we shall note briefly.

■ It is generally held as a matter of substantive law that money voluntarily paid under a mistake of law without fraud or imposition and with knowledge of all of the facts cannot be recovered back in any sort of action, either at law or in equity. Galveston County v. Gorham, 49 Tex. 279; Gilliam v. Alford, 69 Tex. 267, 6 S.W. 757; Graham v. Billings, Tex.Civ.App., 51 S.W. 645, pt. 1, error dismissed; Markum v. Markum, Tex.Civ.App., 210 S.W. 835, pt. 2, error dismissed; Lange v. Binz, Tex.Civ. App., 281 S.W. 656, pt. 2; Ohio National Life Ins. Co. v. Board of Education, 387 Ill. 159, 55 N.E.2d 163; Chrysler Light & Power Co. v. City of Bedfield, 58 N.D. 33, 224 N.W. 871, 63 A.L.R. 1337 and notes.

■ All interest payments in this case were made by the city voluntarily without fraud or imposition of any kind and with full knowledge of all the facts as they existed from time to time. They were so made and accepted for the purpose and with the intention of compensating the bondholders for the use of their money and in consideration of the agreement of the latter to postpone the payment of the principal. Such payments so made actually accomplished their intended purposes. Assuming that they were made under a mistake of law, we see no valid reason, either at law or in equity, why the city should now be permitted to reap any further benefit from such payments in addition to those which the parties intended the city should receive and which the city has already fully received.

Moreover, it conclusively appears that the right of the city, if any it ever had, to recover such interest payments or to receive or secure any further benefits by reason thereof was barred by the two or the four year statute of limitations long prior to the time when such right was first asserted in this cause or the time when this suit was instituted. 34 Am.Jur. 59, Sec. 65; Nelson v. San Antonio Traction Co., 107 Tex. 180, 175 S.W. 434, pt. 3–4; Huggins v. Johnston, 120 Tex. 21, 35 S.W.2d 688, pt. 3–5.

■ Furthermore, even though the city had made such payments under a mutual mistake of fact and even though the right to recover further benefits therefrom by offset, counterclaim or otherwise, were not barred by any applicable statute of limitations, we think it would nevertheless be inequitable and unjust to allow any credit or deduction in this case on account of such payments. The city was allowed as credits and deductions the reasonable value of all it had paid out for or in anywise

contributed to the total value of the properties. The payment of interest on the outstanding bonds did not constitute any payment for or contribution to the reasonable value of the properties as they existed at the time of trial or at any other time. If the bondholders be denied any recovery for the use of their properties prior to January 28, 1939, as we think they must be, then it would not be right on any theory to deny to them also the benefits they had received from the city by way of interest payments for the use of their money from the time the bonds were issued until February 1, 1937.

■ It also appears to us that the credit of $225,084.80 allowed to the city as its proportionate part of the rentals on account of improvements made by it was and is excessive to the extent of $73,235.51 and that such credit should be reduced to the sum of $151,749.29. Although we have been unable to determine the method by which the trial court arrived at his conclusion as to the city's proportionate part of the rentals, we think it is clear that none of the payments made by the city on account of interest coupons and no part of the barred rentals or interest accruing thereon should have been considered or allowed. On the contrary, this credit should have been confined to the city's proportionate part of the unbarred rentals and interest accrued thereon in the total sum of $541,858.50. Moreover, its proportionate part of such unbarred rentals and accrued interest should have been a sum of money which bears the same relation or proportion to the entire amount of such unbarred rentals and interest as the value of the city's equity in the entire properties bears to the total value of the entire properties. In other words, stating the applicable formula in terms of an algebraic equation, $2,142,448.86 : $541,858.50 :: $600,000.00 : X. When computed in accordance with this formula the city's proportionate part of the unbarred rentals and accrued interest was and is the sum of $151,749.29.

Therefore, we hold the city should have been allowed credits only as follows: (a) $600,000 for improvements; (b) $99,000 for payments on principal; and (c) $151,749.-29 as its proportionate part of unbarred rentals and interest, thus making total credits of $850,749.29, and that the trial court should have awarded a recovery to the bondholders in the sum of $1,833,558.07.

■ The bondholders further assert that the court erred in rendering judgment for the trustee in the sum of $7,500 chargeable against them. The trustee says the court erred in not rendering a judgment in its favor for a larger sum. We overrule the contentions thus presented by both parties. Although the trust indenture under which the trustee was impleaded in this suit provides in effect that attorneys' fees and reasonable expenses to be incurred by the trustee should be paid out of the revenues derived from the property, the obligation thereby evidenced cannot be enforced because the trust indenture is invalid. Evidently, the bondholders made the trustee a party to this suit because they were seeking to recover on the trust indenture. Having failed to prevail on their asserted right to such recovery and having resorted in the alternative to equity for further relief, we think they should be required to pay all reasonable expenses and attorneys' fees necessarily incurred by the trustee. The amount of such fees and expenses presented a fact question for the trial court.

The evidence in the case has been fully developed and the controlling issues of fact raised thereby have been fairly tried. While a correct disposition of the complicated questions of law presented on the appeal is not free from difficulties, we have concluded that the judgment of the court below should be reformed so as to eliminate therefrom the credits which in our opinion were erroneously allowed to the city and as so reformed it should be in all other things affirmed. Accordingly, the judgment of the trial court is reformed so as to award to plaintiffs and interveners a recovery against the city in the sum of $1,833,558.07 with interest thereon from May 5, 1945, until paid, and as so reformed it is affirmed.