**CITY OF MESQUITE, Appellant,**

v.

**SCYENE INVESTMENT CO., Appellee.**

No. 15082.

Court of Civil Appeals of Texas.

Dallas.

June 15, 1956.

Rehearing Denied Nov. 2, 1956.

Virgil R. Sanders, Bowyer, Gray, Thomas, Crozier & Harris, and William W. Sweet, Jr., Dallas, and Balford Morrison, Irving, for appellant.

Prentice Wilson, Dallas, for appellee.

YOUNG, Justice.

The appeal followed Summary Judgment proceedings, Rule 166–A, Texas Rules of Civil Procedure, wherein appellee obtained judgment against the City of Mesquite for $79,339.19 with interest at 6% from date of rendition, representing an amount of indebtedness allegedly due to the Investment Company from appellant municipality.

We gather from the pleading and briefs of the parties that appellee is the developer of an extensive Addition to the City of Mesquite known as Rollingwood Hills Addition and lying wholly within city limits; that about March 30, 1954 defendant City through its governing body accepted a bid from Pelphrey & Basham, contractors, for construction of a sanitary sewer line from the collector line along Mesquite Creek near West Davis Street, and for the construction of a water line from main near the water tower, both to the alley serving the Addition; also water and sewer lines to service lots abutting Derby Lane and Danbury Drive; the approved bid, inclusive of engineering costs, to be $92,800.79, of which the sum of $80,656.74 was allocated to defendant City and $12,144.05 to plaintiff Company. It then advanced to defendant the total cost of construction of the sewer and water lines; with transaction embodied in municipal resolution of date April 6, 1954, which provided in part: "That the Scyene Investment Company shall be reimbursed for the cost of the sanitary sewer line from the collector line along Mesquite Creek near West Davis Street and for the water line from the main near the water tower both to the alley serving Block A, Rollingwood Hills Addition, by the City of Mesquite, Texas, *from the sale of bonds when the revenues allow such sale.*" (Emphasis ours.) (An unused balance of the sum total so advanced was later refunded to the developer, leaving $79,339.19 as balance of indebtedness, and judgment was finally rendered in such amount.)

The suit of appellee was on an express contract interpreting above wording of the resolution to mean that "* * * said plaintiff would be reimbursed for said advancement for said purpose in said sum of $80,656.74 out of and by use of the first proceeds to be received by the defendant City from the sale of previously voted and unsold water and sewerage revenue bonds * * *"; in other words, that "use of the words 'From the sale of bonds when the revenues allow such sale,' as set forth in said resolution, had reference to and by all parties meant and was intended to refer to the unissued and unsold $315,000.00 of revenue bonds recently issued and sold by the defendant City

* * *." Alternatively, this appellee pled an implied contract, seeking recovery in the same amount ($80,656.74) as the reasonable value of benefits received and accepted by defendant City from the moneys advanced to it by plaintiff, as well as the reasonable value of the sewer and water lines accepted by defendant and which were paid for by plaintiff's furnished money.

Appellant City in lengthy allegations (first of exceptions and denial) pled prematurity of suit; and that plaintiff's proposal in the beginning was to advance the funds necessary for installation of said water and sewer lines, a refund of the cost thereof to await such time as the revenues from property in the Addition would justify the sale of revenue bonds; the anticipated money from sale of bonds already authorized being earmarked for other purposes; also charging illegality on various grounds of the express contract or resolution sued upon. The Investment Company by supplemental petition and exceptions asserts that the City's interpretation of the April 1954 resolution would result in an illegal and unenforceable contract, in that "the City has no power to vote, issue or sell revenue bonds, the payment or retirement of which would be restricted solely to the revenues received or collected by the City on account of sewer and water line connections to some particular subdivision with said City, but can only vote, issue and sell general sewer and water revenue bonds to be paid and retired from sewer and water revenue collections from each and every citizen within the city limits"; thereby necessitating its alternative suit on implied contract—an action barred by the two-year statute of limitation beginning with date of advancement of the money to defendant City (April 6, 1954). The work of installing these water and sewer lines has long since been completed by the contractors; and the City does not deny its acceptance of same and entire domination and control thereof since com-

pletion; or, for that matter, its adoption of the resolution, appellee's furnishing of the money for the particular purpose, and use of the advancement for construction of the lines.

Terms of the resolution that appellee was to be reimbursed in the sum of $80,-656.74 "from the sale of bonds when the revenues allow such sale," are obviously ambiguous, requiring evidence to determine its meaning; and summary judgment is precluded on basis of the express contract, as appellant initially points out. Appellee admits that the judgment rendered was upon its alternative cause of action; in such connection asserting that appellant City has not, by affidavits or other showing, required under Rule 166–A, raised genuine issues of any material fact; thereby authorizing the entry of summary judgment on basis of an implied contract as a matter of law.

To appellee's motions for summary judgment (original and supplemental) were attached the affidavits of Vernon R. Bostick, its Vice President, and Homer A. Hunter, City Engineer of defendant City; which exhibits are too lengthy for inclusion in full. Each affiant reiterated the terms of said April 6 resolution; Bostick stating that for the money advancement of $92,800.79, his Company was to be reimbursed to extent of $80,656.74 from sale of $315,000 worth of revenue bonds remaining of an already authorized bond issue; that said water and sewer lines had been completed and accepted by the City, with the latter exercising full control and domination over the lines, now utilizing same for revenue purposes. And further: "That the reasonable value of said water and sewer lines upon completion and at the time of acceptance of same by the City of Mesquite in the summer of 1954 was in excess of $91,483.24; that the actual cost of the construction of said sewer and water lines, including the cost of right of way and engineer's supervisions fees, aggregated the sum of $91,483.-24; that the value of the money and prop-

erty furnished by the Scyene Investment Co. to the City of Mesquite and the benefits which the City of Mesquite has received and accepted is in excess of $91,-483.24; that the Scyene Investment Co. entered into the transaction in good faith and upon reliance on the promises and agreements made to it by the governing body of the City of Mesquite, who knowingly received and accepted Scyene Investment Co.'s money and used the same for the purposes aforesaid." The affidavit of Homer A. Hunter likewise stated: " * * * that the cost of the construction of said sewer and water lines, including right of ways acquired in connection therewith was approximately $91,483.24, and that the reasonable value of said sewer and water lines at the time of their completion and as of this date is the said sum of approximately $91,483.24."

■ Above motions for summary judgment were not replied to by appellant City, and its amended answer was sworn to by Virgil R. Sanders, Attorney; not indicating that he had personal knowledge of the material facts therein alleged. No genuine issues of fact were thereby raised by defensive pleading; Sparkman v. McWhirter, Tex.Civ.App., 263 S.W.2d 832 (writ ref.). This record, however, discloses further facts and occurrences as follows:

The hearing was had May 7, 1955, by the court taken under advisement until July 7, when the parties were informed that appellee was entitled to judgment, with formal rendition on July 12. On July 13, 1955 appellant filed the amended affidavit of Homer A. Hunter, of date July 9, the effect of which was a correction of his earlier sworn statement of May 6, and is quoted in part: "The affidavit (of May 6) was not prepared by me but by the attorney for Scyene Investment Co. and contained approximately three typewritten pages reciting various detailed facts concerning the construction of the sewer and water lines, all of which are substantially accurate,

however in paragraph 7 of said affidavit the following is stated: 'Affiant further says that the cost of the construction of said sewer and water lines, including right of ways acquired in connection therewith was approximately $91,483.24, and that the reasonable value of said sewer and water lines at the time of their completion and as of this date is the said sum of approximately $91,483.24.' *In view of the wording of paragraph 7 relating to the cost of construction and being tied-in with the 'reasonable value' I misunderstood the meaning of the complete sentence, and I now desire to amend said affidavit by deleting the last phrase thereof.* In this connection I wish to further say that while the cost of construction is sometimes used as a yardstick in determining the reasonable value of property, in the case of the sewer and water lines in question their reasonable value to the City of Mesquite is considerably less than the actual cost, *at this time* for the following reasons: Until the area served by this sewer and water line is developed and houses are constructed there will be no income to the city from this area. As houses are constructed and tap-on charges are made *of* the property owners and general taxes levied the sewer and water lines will enhance in value since the income produced from them will be increasing. At the present time there are only approximately 91 houses tied in to the sewer line and 95 houses tied in to the water line, whose owners have paid or are paying revenue to the City of Mesquite, however the total gross income received through June 1955 from the sewer and water lines in question has been only $1,064.-19, with substantial expense in connection with furnishing such service. In view of these facts the reasonable value of the sewer and water lines to the City of Mesquite on April 6, 1954 and at the present time, is, in my opinion, *considerably less* than the original cost of construction." (First and third emphasis ours.)

■ Defendant's motion for new trial referred to the above amended affidavit of

Homer Hunter; and in amended motion incorporated same as part thereof; the court duly considering and overruling the motion on August 31, 1955. Rule 325, T.R.C.P., requires the filing of a motion for a new trial under the circumstances. For it related to a matter in nature of newly discovered evidence in this, a non-jury trial. The two affidavits of Hunter were undoubtedly in conflict. But even so, the court was duty bound to consider the second or corrected one, and upon consideration the motion for new trial should have been sustained. And why? The record was thereby left with only the affidavit of Bostick on the issue of reasonable value of benefits received by defendant City from the total of plaintiff's advancement. Mr. Bostick was its Vice President and an interested party. Moreover, his affidavit does not show him as one qualified to testify on the trial concerning the reasonable value to the City of these completed sewer and water lines. An issue of fact is thus apparent, precluding a summary judgment. "The weight of authority is to the effect that summary judgment will lie only if the state of facts at the hearing of the motion would, if presented in a jury trial, entitle movant, with all reasonable doubts resolved against him, to a peremptory instruction. Fowler v. Texas Employers' Insurance Association, Tex.Civ.App., 237 S.W. 2d 373, writ refused". Hurley v. Knox, Tex.Civ.App., 244 S.W.2d 557, 559.

The judgment under review is accordingly reversed and remanded to the trial court for further proceedings.

## On Rehearing.

The points first argued on rehearing relate to insufficiency of the Hunter amended affidavit of date July 9, 1955 as raising an issue of fact by way of newly discovered evidence; and similar insufficiency of the City's unsworn motion and amended motion for new trial. Appellee's point 1 will be quoted: "This Court erred in reversing and remanding said cause on the ground that the amended affidavit of Homer Hunter related to matters in the nature of *newly discovered evidence,* and that the trial court was *in duty bound* to grant appellant a new trial based solely upon the filing of said amended affidavit with the clerk of the court after trial and rendition of judgment for appellee on July 12, 1955, since (a) the uncontradicted record shows that the amended affidavit related to matters of which appellant and its attorneys of record had both actual and constructive notice for a period of nearly three months before rendition of said judgment; (b) said motion for new trial was not sworn to by either of appellant's attorneys of record or by any officer or agent of appellant City; and (c) the unsworn motion for new trial is utterly void of any showing or allegation that appellant and its attorneys of record did not discover the facts to which said affidavit related until after the trial of the cause and judgment rendered thereon." Point 3 asserts error on the further ground that the grant of a motion for new trial is a matter for the trial court's discretion; the instant record not disclosing any arbitrary court action or that such discretionary power has been abused. In this connection, the City's amended motion for new trial refers to the amended affidavit of Hunter, "dated July 9, 1955 which is on file in this cause and which is hereby incorporated herein as a part of this pleading * * *"; then quoting that part of the affidavit emphasized in original opinion.

We agree with appellee's reiterated statement of principles governing any motion for new trial on ground of newly discovered evidence; in other words, the applicant must show that knowledge of its existence was acquired subsequent to the trial; that it was not due to want of diligence that such evidence was not discovered and obtained in time to be used when the case was tried; that it was material (not cumulative) and that if admitted it would probably change the result on another trial. 31 Tex.Jur., p. 90. But the cited rules more properly relate to the trial

of a cause on its merits; it being enough, we think, in a proceeding for summary judgment that the affidavit reflecting such belated issue of fact be brought to the Court's attention during course of the trial. And a court trial as commonly known is inclusive of every step taken in the determination of the issues between the parties, and therefore includes the motion for new trial. Lawyers Lloyds v. Webb, 137 Tex. 107, 152 S.W.2d 1096. "Ordinarily, a party moving for summary judgment is held strictly to a conclusive showing that no fact issue exists and that he is entitled to judgment without further delay, and courts accord resisting party considerably more indulgence, and motion will be denied if it appears that a *substantial fact dispute may exist, regardless of informalities or defects in resisting party's papers.* * * * The underlying purpose of Rule of Civil Procedure authorizing summary judgment is elimination of patently unmeritorious claims or untenable defenses, and rule was not intended to deprive litigants of their *right to full hearing on merits of any real issue of fact.*" (Emphasis ours.) Kaufman v. Blackman, Tex.Civ.App., 239 S.W. 2d 422, syls. 3 and 4.

▇▇▇ Further points and argument thereon will be discussed briefly: (1) We have not held that Bostick, appellee's Vice President, was "thereby precluded from testifying." Our conclusion in that connection was that the affidavit of Bostick, an interested witness, was not conclusive on summary judgment hearing; his sworn statement at most merely demonstrating the existence of a fact issue; (2) appellee says that it is now entitled to judgment, having sued on an implied contract to compel restitution and compensation for the money furnished; and cites Hayward v. City of Corpus Christi, Tex.Civ.App., 195 S.W.2d 995, 1004, where the rule is followed that: " ' * * * [W]here, under a contract which is merely invalid and not fraudulent or malum in se, one has furnished to a municipality, or other political subdivision, real or personal property,

whether or not enhanced by his own labor, which property the public fails to pay for, he may upon equitable terms recover it in specie, if recovery may be had without material injury to other property and without causing the public any inconvenience other than results from depriving it of that to which it has no just claim.' " However, plaintiff has first declared upon an express contract, seeking recovery of $80,656.74 (less refund, or a net of $79,339.19), and only alternatively for the same amount, "being the reasonable value of the benefits received and accepted by defendant from the money advanced by plaintiff to it and as well the reasonable value of the constructed sewer and water lines accepted by defendant and which were paid for by use of plaintiff's furnished money"; obviously comprehending an issue of fact for determination by court or jury. Here we may add that this Development Company has thus stated a cause of action, concerning which the rule announced in Sluder v. City of San Antonio, Tex.Com. App., 2 S.W.2d 841, 842, is undoubtedly controlling. The Supreme Court there held: "[W]here a county or municipality receives benefits under a contract, illegal because not made in conformity with the Constitution or statute of the state, or charter provision of the city, it will be held liable on an implied contract for the reasonable value of the benefits which it may have received." Also that the right to recover under an implied contract for benefits conferred upon municipalities applies with equal force, whether a party contracting with a city furnishes money, property, or personal services.

And lastly appellee argues that the amended affidavit of Hunter relates to reasonable value of the sewer and water lines as of July 9, 1955—an immaterial date. Plaintiff alleged no fixed date as to when its suit on an implied contract had accrued; whether on date of petition declaring on same (February 1955), or on date of acceptance of the work by the City (July 21, 1954), or at time the money was fur-

-nished (April 6, 1954). At any rate the Hunter affidavit as amended qualifies affiant as a witness throughout the period mentioned.

Motion for rehearing is overruled.